IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MEGAN MCGUIRE | ) | |
| | ) | CASE NO.  8:16 CV 00004 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CORY COOPER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

---

## AFFIDAVIT OF TIM DOLAN

---

| | |
|---|---|
| COUNTY OF DOUGLAS | ) |
| | ) |
| STATE OF NEBRASKA | ) |

Comes now, your affiant, Tim Dolan, under oath, and deposes and states as follows:

1.  I am an attorney duly licensed to practice law and in good standing in the States of Nebraska and Colorado.  I am a Deputy Douglas County Attorney working in the Civil Division of the Douglas County Attorney's Office.  Our office is located in Room 909 of the Civic Center, at 1819 Farnam Street, in Omaha, Douglas County Nebraska.  I am one of the attorneys representing Defendants Timothy F. Dunning and the County of Douglas, Nebraska in the above-captioned lawsuit.  During the course of representing these Defendants, I have become familiar with pleadings and other documents located during discovery and exchanged among counsel for the various parties in this lawsuit.

2.  I make this affidavit pursuant to NE Civ. R 7 (b) (2) (c).  Attached to this affidavit are true and correct copies of the following documents exchanged during discovery:

    a.  Ms. McGuire's responses to Defendant Timothy F. Dunning's First Set of Requests for Admission to Plaintiff Megan McGuire.  I am also including a copy of the actual requests for admission served upon Ms. McGuire in order to incorporate Exhibit "A" thereto into this attachment.  Exhibit "A" – Ms. McGuire's written statement to the Omaha Police Department – was omitted from her responses.

    b.  Ms. McGuire's answers to Defendant Timothy F. Dunning's Second Set of Interrogatories to Plaintiff Megan McGuire.

1



EXHIBIT
1.

c. Mr. Cooper's answers to Defendant Timothy F. Dunning's First Set of Requests for Admission Defendant Cory Cooper which were originally served on or about June 7, 2016 (*See* Document 34) and delivered to our office on or about August 9, 2016. Mr. Cooper did not copy the original requests for admission when responding, so I have also attached a copy of Defendant Timothy F. Dunning's First Set of Requests for Admission Defendant Cory Cooper.

Further your affiant sayeth naught.

_____
Tim Dolan

Subscribed and sworn before me this 16th day of November 2016.

GENERAL NOTARY - State of Nebraska
GARY A. STRAIN
My Comm. Exp. June 25, 2019

_____
Notary Public

2

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MEGAN MCGUIRE, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | Case No. 8:16 CV 00004 |
| | ) | |
| CORY COOPER, TIMOTHY F. DUNNING, | ) | |
| Individually and in his official capacity as Sheriff | ) | |
| of Douglas County, Nebraska, and DOUGLAS | ) | |
| COUNTY, | ) | |
| | ) | JURY TRIAL DEMANDED |
|     Defendants. | ) | |

### PLAINTIFF'S RESPONSES TO DEFENDANT TIMOTHY F. DUNNING'S
### FIRST SET OF REQUESTS FOR ADMISSION TO PLAINTIFF MEGAN MCGUIRE

Plaintiff Megan McGuire, by and through her counsel, Loevy & Loevy, responds to Defendant Timothy F. Dunning's First Set of Requests for Admission to Plaintiff Megan McGuire as follows:

**Request No. 1:**

Admit that on February 10, 2013, Plaintiff Megan McGuire (hereafter "Ms. McGuire") was over eighteen years of age.

**ANSWER:** **Plaintiff objects to this request to admit because it is overbroad and irrelevant if it is asked in order to imply that Plaintiff was old enough to consent to Defendant Cooper's unlawful abuse of his police powers to commit a sexual crime against Plaintiff. Without waiving that objection, Plaintiff admits.**

**Request No. 2:**

Admit that on February 10, 2013, Kyle Worland was over eighteen years of age.

**ANSWER: Plaintiff objects to this request to admit because it is overbroad and irrelevant and seeks an admission regarding a third party's date of birth, information that she has no personal knowledge to confirm. Without waiving those objections, on information and belief, Plaintiff admits.**

EXHIBIT

**1. a.**

**Request No. 3:**

Admit that on May 8, 2013, Ms. McGuire provided the Omaha Police Department with a written statement.

**ANSWER: Plaintiff admits.**

**Request No. 4:**

Admit that Exhibit "A" hereto is a true and correct copy of the written statement Ms. McGuire provided to the Omaha Police Department.

**ANSWER: Plaintiff admits.**

**Request No. 5:**

Admit that when Ms. McGuire wrote the written statement that is Exhibit "A" hereto, it (Exhibit "A" hereto) was true to the best of her knowledge.

**ANSWER: Plaintiff admits that her statement was true to the best of her recollection at the time she gave the statement, and affirmatively states that the statement was not a complete description of every detail of the unlawful conduct taken against her.**

**Request No. 6:**

Admit that the written statement that is Exhibit "A" hereto is true to the best of Ms. McGuire's knowledge.

**ANSWER: Plaintiff admits that her statement is true to the best of her recollection, and affirmatively states that the statement is not a complete description of every detail of the unlawful conduct taken against her.**

RESPECTFULLY SUBMITTED,

By:   /s/ Mark Loevy-Reyes
      *Attorney for Plaintiff*

2

Arthur Loevy
Jon Loevy
Mark Loevy-Reyes
Cindy Tsai
LOEVY & LOEVY
311 N Aberdeen Street, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

## **CERTIFICATE OF SERVICE**

I, Mark Loevy- Reyes, an attorney, hereby certify that I served the foregoing Plaintiff's Responses to Defendant Timothy F. Dunning's Firs Set of Requests For Admission to Plaintiff Megan McGuire on all counsel of record via electronic mail on July 25, 2016.

/s/ Mark Loevy-reyes

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MEGAN MCGUIRE | ) | |
| | ) | CASE NO.  8:16 CV 00004 |
| Plaintiff, | ) | |
| | ) | **DEFENDANT** |
| vs. | ) | **TIMOTHY F. DUNNING'S** |
| | ) | **FIRST SET OF REQUESTS** |
| CORY COOPER, et al. | ) | **FOR ADMISSION TO** |
| | ) | **PLAINTIFF MEGAN** |
| Defendants. | ) | **MCGUIRE** |

To:   Plaintiff Meghan McGuire, care of her attorneys:
Arthur Loevy, Jon Loevy, Mark Loevy-Reyes, and Cindy Tsai
Loevy & Loevy
312 North May Street, Suite 100
Chicago, Illinois 60607

Defendant Timothy F. Dunning (Dunning), by and through the undersigned Deputy County Attorneys, hereby serves the following Defendant Timothy F. Dunning's First Set of Requests for Admission to Plaintiff Megan McGuire, number 1 through 6, upon Plaintiff Megan McGuire pursuant to Fed. R. Civ. P. 36 and NE Civ. R. 36.1.  Plaintiff Megan McGuire is advised that, pursuant to Fed. R. Civ. P. 36 (a) (3), she has thirty (30) days from the date she was served to serve written answers or objections upon Dunning (by and through the undersigned Deputy County Attorneys).  Plaintiff Megan McGuire is further advised that, pursuant to Fed.R.Civ.P. 26 (e) (1) (A), she may be required to supplement or correct responses to the below Requests for Admission.

## FIRST SET OF REQUESTS FOR ADMISSION

**REQUEST NO. 1:**   Admit that on February 10, 2013, Plaintiff Megan McGuire (hereafter "Ms. McGuire") was over eighteen years of age.

**ANSWER:**

1

**REQUEST NO. 2:**   Admit that on February 10, 2013, Kyle Worland was over eighteen years of age.

**ANSWER:**

**REQUEST NO. 3:**   Admit that on May 8, 2013, Ms. McGuire provided the Omaha Police Department with a written statement.

**ANSWER:**

**REQUEST NO. 4:**   Admit that Exhibit "A" hereto is a true and correct copy of the written statement Ms. McGuire provided to the Omaha Police Department.

**ANSWER:**

**REQUEST NO. 5:**   Admit that when Ms. McGuire wrote the written statement that is Exhibit "A" hereto, it (Exhibit "A" hereto) was true to the best of her knowledge.

**ANSWER:**

**REQUEST NO. 6:**   Admit that the written statement that is Exhibit "A" hereto is true to the best of Ms. McGuire's knowledge.

**ANSWER:**

DATED this 7ᵗʰ day of June 2016.

                                  TIMOTHY F. DUNNING, Individually and in his official capacity as Sheriff of Douglas County, Nebraska, and COUNTY OF DOUGLAS, NEBRASKA, Defendants.

                                  DONALD W. KLEINE,
Douglas County Attorney.

BY:                # 20978
                          Timothy K. Dolan #20978
                          Meghan M. Bothe #25208
                          Deputy County Attorneys
                          909 Civic Center
                          Omaha, NE  68183

T: (402) 444-7622
F: (402) 444-6817
tim.dolan@douglascounty-ne.gov
meghan.bothe@douglascounty-ne.gov

## CERTIFICATE OF SERVICE

I hereby certify that on June __7th__, 2016, I mailed a copy of the above Defendant Timothy F. Dunning's First Set of Requests for Admission to Plaintiff Megan McGuire by First Class United States Mail, postage prepaid, to the following:

Arthur Loevy
Cindy Tsai
Jon Loevy
Mark Loevy-Reyes
LOEVY, LOEVY LAW FIRM
312 North May Street, Suite 100
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
arthur@loevy.com
cindy@loevy.com
jon@loevy.com
mark@loevy.com

Mr. Cory Cooper
10212 V Street
Omaha, Nebraska 68127.

3

1 of 12

**OMAHA POLICE DEPARTMENT**
**STATEMENT**

Wednesday Date: 5/8/13 Time: 1802 RB No. 56510Q

The following statement is given by Megan M McGuire
Name (First/Middle/Last)

of 7711 South 21st Street Bellevue NE D.O.B. 12.16.1993 Sex: Female
Address          City/State/Zip Code

Race: White          to R. Butler 1738
Officer(s)

at 11949 Q ST          Omaha, Douglas County, Nebraska.
Location

This statement is in regard to Sexual Assault at Zorinsky Lake
Offense/Incident          Location

on _____
Date Reported

Megan McGui

~Kyle Worland and my self went to Zorinski

~Was~ Where hanging out after we got of
Work at what I would say around 8 o'clock
and we decided to go sit in Zarinsky Park we
where in the Parking lot on I believe it is
168th and well when your coming from Center
twards Q street it is on your Left side
The first Parking lot for the Park on that
side. It is that one with bathrooms and the
Parking lot Airial view is like this....

Bathroom

Lake

168th          Bridge

Lake

Not this

(continue on reverse side)

EXHIBIT A

8:16-cv-00004-JEB-SMB  Doc # 63-1  Filed: 11/16/16  Page 11 of 45  Page ID # 311

We when in Kyle's Truck, ~~and it is~~ a Tanish/Ba
color and at the time had a st.louis cardinal's stick
on the Back window. We where parked
facing twards the Bridge and to my knowle
Kyle's headlights where on, because they always
are when the car is on. uhh so I don't have any idea
what Kyle was wearing but I think it was his
Blue walmart Shirt and his work Pants, ~~thise~~ th
~~and it is~~ tan. And I was wearing my tie dye shi
with a V neck, and my purple boy's like girls
hoodie. and my gray Sweat pants. And anyway
We where at the Park and we where just
sitting there talking and well ~~we~~ one thing lead
to another and we ended up having intercourse
and then after we where done it. got back
into the Passenger Seat and we where
about to smoke a bowl and then Kyle said
"Oh Shit car oh shit cop car" and so I was
kinda just like scrambling for
my Pants I had my underwear on
Idk what color but my bra was black f
that matters. and so I ended up just th

Q. Is there anything you would like to add or change in this statement?
A. ___No___

Q. Is this statement given freely and voluntarily and without any threats or promises, and is it true to the best of your knowledge?
A. ___Yes___

Witnesses: _____ 1738

Megan McGinn   19:58
Signature        Time

**OMAHA POLICE DEPARTMENT**
**STATEMENT**

☐: Wednesday Date: 5/8/13 Time: 1802 RB No. 56510 Q

The following statement is given by Megan M McGuire
_____
Name (First/Middle/Last)

of 7111 South 21st street Bellevue, NE D.O.B. 12.16.1993 Sex: Female
_____
Address        City/State/Zip Code

Race: White        to R. Butter 1738
_____
Officer(s)

at 11949 Q ST        Omaha, Douglas County, Nebraska.
_____
Location

This statement is in regard to Sexual assault at Zorinsky Lake
_____
Offense/Incident        Location

on _____
Date Reported

a coat over my legs and not really
having time to pull my pants up. ~~because~~
but they where around my ancles.
So well then the cop came up to Kyles
Truck knocked on my Passengers side
window ~~B~~ and shined his light in
while Kyle rolled the window down
and all I rember about that whole thing was
Kyle talking to the cop I don't know
what he said to him because I just saw
the cops flashlight on a jar of weed
as soon as he shined his light in the
truck so all I could think was we're
fucked like so caught up. ~~so th~~ ~~thisbled~~ So then
the officer asked me to step out of
the truck and I was like well can I
put my pants on first. And he said okay

(continue on reverse side)

RO 92 (92) OMAHA NEBRASKA

so. I pulled my pants up and got out of the car truck. He walked me back to his cruiser and had me sit on the passengers side while we where walking back to the cop car he had asked me if I had ever been in any trouble befor, I said no not really, I mean I ran away when I was you. But no real trouble. He had also taken Kyles Identification Card before he walked me back to the cruiser and than he asked me my information because I didn't have my ID and I told it to him he typed it all in both mine and Kyles info- into his computer which was mounted in the middle of the car and well the middle of the front part anyway the actual middle was a glass Plastic whatever it is sliding divider and the back seats where hard like tanish, I think, Plastic, and the had the seat belts all sticking out of them all weird like, ya know? and then after he typed in our info and stuff he went and got Kyle

Q. Is there anything you would like to add or change in this statement?

A. No

Q. Is this statement given freely and voluntarily and without any threats or promises, and is it true to the best of your knowledge?

A. Yes

Witnesses:

_Megan McGuire_ 19:58
Signature                Time

1738

3 of 12

**OMAHA POLICE DEPARTMENT**
**STATEMENT**

Wednesday Date: 5/8/13    Time: 1822    RB No. 565/0Q

The following statement is given by Megan McGuire
Name (First/Middle/Last)

of 7111 South 21st Street Bellevue NE D.O.B. 12.16.1993 Sex: Female
Address          City/State/Zip Code

Race: White          to R. Butter 178
                              Officer(s)

at 11949 Q ST
Location                                    Omaha, Douglas County, Nebraska.

This statement is in regard to Sexal assault at Zorinsky lake
                    Offense/Incident              Location

on _____
         Date Reported

He made Kyle lean against the Back
driers side of the cruiser behind the
back doors and he Patted Kyle down, I was
never searchd then he had Kyle sit in the back
with me but I'm Pretty sure Kyle was handcuff
I really don't remeber but I think so becaus
when the cop whent and searchd Kyles truck
Kyle was saying how the cop wasn't Pushing
him around and man handleing him like they
Usually do, and that his cuffs wherent like suppo
tight like he could move his wrist around &
so then after like IDK 20 ish min he cam
back he took Kyle back to his truck and
came back to the cruiser he got into the front
like drivers side like a normal Person and then
he was like so what is Kyle to you and yada
like is he just a friend or what's going on?

(continue on reverse side)

and I was like well he's like my boyfriend and He was like well ~~Teder you~~ he has enough stuff in his Truck to send him to jail, and I was like well I don't understand how, there was only like a ~~quarter of an oz~~ of marijuana in the truck and ~~my~~ Pipe and ~~the then~~ told me there was a scale and said that's intent to sell and so he would go to jail for that And then the cop said well what are you willing to do to keep ~~kyle~~ out of jail and I was like I don't know can I take the charge? Can we split it up? like can you just give us a ticket? and I was like well how long in jail like I'll take it I don't care then he was like no not like that I don't want to give you a ticket or take any one to jail. He was like can you ~~give~~ give me some reason as to why he shouldn't go to jail and I pulled the female card and was like he's a good guy great heart old soul down to earth, just talked him up basically and he was like okay hold on and took all the evidence back to Kyle

Q.  Is there anything you would like to add or change in this statement?

A.  No

Q.  Is this statement given freely and voluntarily and without any threats or promises, and is it true to the best of your knowledge?

A.  yes

Witnesses:

_____ 1739

Signature: *Megan M_____*   Time 19.58

OMAHA POLICE DEPARTMENT
STATEMENT

Wednesday Date: 5/8/13    Time: 1802    RB No. 565100

The following statement is given by Megan M McGuire
                                   Name    (First/Middle/Last)

of 7111 south 21st Street Bellvue NE    D.O.B. 12.16.1993 Sex: Female
   Address              City/State/Zip Code

Race: White    to    R-Butter 1738
                     Officer(s)

at 1/949 Q ST    Omaha, Douglas County, Nebraska.
      Location

This statement is in regard to Sexal assault at Zorinsky lake
                               Offense/Incident              Location

on _____
        Date Reported

And had him throw it all into the lake
then had Kyle get back into his truck
The officer then walked back to the cruiser
and got back into the drivers seat and
okay so I just had Kyle throw every
thing into the lake now what is gonna
keep him out of trouble? and I was like
IDK? and he was like well think of some
thing and I was like IDK what you want
like you want money ~~you want~~ or something?
He kinda just laughed at that. And he was like
really think about what you personally can
do to keep ~~Kyle~~ out of jail and I was like
IDK what you want like you want me to
just list off stuff? and he was like yea.
just let ~~me~~ say whatever you think would
be a good idea and I was like you want me
(continue on reverse side)

to like idk eat a box of cookies or
like go jump in the lake cuzz it's
freezing outside and It sounds like some
truth or dare shit I was just being funny/
rediculose cuzz IDK what he wanted. And he just
laughed and was like no that's not what I
want and then he was like alright you
have like 10 min to think of something
and we sat in silence for a while well actually
there was a lot of sitting in silence I ~~didn't~~
didn't reply to him right away I sat in
silence like every time for a little bit ins;
contemplating on what to do And after a
while of silence I was like why don't you
just tell me what the fuck you want cuzz
I have no idea and like IDK where just sitt
here and you don't wanna give us a ticket
and I'm like out of ideas. Just tell me what
you want and he was like I want you to
tell me what I want, basically and I was like
IDK what your getting at, well I have
an idea but I feel like it's not okay

Q.   Is there anything you would like to add or change in this statement?
A.   No

Q.   Is this statement given freely and voluntarily and without any threats or promises, and is it true to the best of your knowledge?
A.   Yes

Witnesses:

1738

Megan McGuire
Signature          Time

OMAHA POLICE DEPARTMENT
STATEMENT

Wednesday Date: 5/8/13          Time: 1802          RB No. 56510Q

The following statement is given by Megan McGuire
Name   (First/Middle/Last)

of 7111 South 21st Street Bellvue NE   D.O.B.: 12.16.1993   Sex: Female
Address          City/State/Zip Code

Race: White          to R. Butler 1738
Officer(s)

at 11949 Q St          Omaha, Douglas County, Nebraska.
Location

This statement is in regard to Sexual assault at Zorinsky lake
Offense/Incident          Location

on _____
Date Reported

And like I'm gonna get in trouble
for it and stuff if I say it and it
seems wierd and I really don't want
it to come to that And I don't Kina
And h said will just say it you
wont get in trouble and I ue
like uhh... sat in silence for a good
like 5 min at least and then he was lik
Just say it and I was lik
uhh will uhh what you trying to see
me naked or some shit? And He wa

(continue on reverse side)

Continued statement of                                    Page _10_ of _12_ Pages
BB No.
8:16-cv-00004-JFB-SMB   Doc # 63-1   Filed: 11/16/16   Page 19 of 45 - Page ID # 319

Like I'm not saying no. And so
I was like fuck it, I took my Jaket
my shirt and my Bra off and Put
my jacket Back on cuzz it was Freez
and sthen He just looked at me through the
rear view mirror and then he got out
of the car and opened the back
Driers side door unzipped his
Pants and was like well

Why don't you come over

here and show me what you.

Willing to do to keep

My self out of trouble.

then he Pulled out his uh

Penis and so I just Kinda

2.  Is there anything you would like to add or change in this statement?
A.  No

2.  Is this statement given freely and voluntarily and without any threats or promises, and is it true to the best of your knowledge?
A.  Yes

Witnesses:
_____ 1738

_Megan McGuire_    19.58
Signature              Time

Day: __Wednesday__ Date: __5/8/13__   Time: __1862__   RB No. __56570 Q__

Following statement is given by __Megan McGuire__
                                   Name (First/Middle/Last)

of __7111 South 21st Street. bellvue NE__ D.O.B. __12.16.1993__ Sex: __Female__
   Address                City/State/Zip Code

Race: __White__   to __R. Butler 1738__
                        Officer(s)

at __1/949 Q st__                                   Omaha, Douglas County, Nebraska.
   Location

This statement is in regard to __Sexel assault__ at __Zorinsky lake__
                                 Offense/Incident        Location

on _____
        Date Reported

Like IDK stuck it my mouth cuzz
like IDK what else was I gonna do?
But it only lasted like barely 2 seconds
and then the said stop I d.d I
grabbed my shirt and he said
[crossed out] so [crossed out] I [crossed out]
but I could go and then as I
went to get out he said this never
happend right? and I said IDK what your
talking about officer. and left. I went
Back got into kyles [crossed out] truck and
like started Balling and told him
what happened. he flipped shit I thought
He was mad at me so I like tried to
fix it. talk him down to calm and he had
already gotten out of the truck and

was trying to walk of and yell out his frustration, and [crossed out] and that's when I noticed my tip laying on the ground [crossed out] where the cruiser was [crossed out] prev and so I grabbed it. I believe it was there because when the cop took the paraphanelia and such he set it ontop of his car and it blew off But uhh yeal that's basically the end of it. He drove away right affter he let me go also he didn't have his headlights on [crossed out] when he left and he also never turned on his Blue and red light.

Q. Is there anything you would like to add or change in this statement?

A. No

Q. Is this statement given freely and voluntarily and without any threats or promises, and is it true to the best of your knowledge?

A. Yes

Witnesses:

1738

Megan McGuire
Signature

19.58
Time

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| MEGAN MCGUIRE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 8:16 CV 00004 |
| ) | |
| CORY COOPER, TIMOTHY F. DUNNING, ) | |
| Individually and in his official capacity as Sheriff ) | |
| of Douglas County, Nebraska, and DOUGLAS ) | |
| COUNTY, ) | |
| ) | JURY TRIAL DEMANDED |
| Defendants. ) | |

## PLAINTIFF'S RESPONSES TO DEFENDANT TIMOTHY F. DUNNING'S SECOND SET OF INTERROGATORIES TO PLAINTIFF MEGAN MCGUIRE

Plaintiff Megan McGuire, by and through her counsel, Loevy & Loevy, responds to Defendant Timothy F. Dunning's Second Set of Interrogatories to Plaintiff Megan McGuire as follows:

## INTERROGATORY NO. 5:

Identify any allegation of sexual misconduct – including sexual assault - against any Douglas County Sheriff's Office Deputy from 2005 to the present date that you have knowledge of, without regard to whether the allegation was founded or unfounded, by identifying the date of the alleged sexual misconduct (including sexual assault), the identity of the person(s) involved, and the nature of the alleged sexual misconduct (for example, whether it was verbal or physical).

**ANSWER:     Plaintiff objects to this interrogatory as Plaintiff's discovery on the subject is just beginning and Defendants control the information related to this interrogatory. Without waiving those objections, Plaintiff refers Defendant to documents produced by the County Defendants and Bates Numbered: 3547-3585; 3788-3810. Plaintiff further references the attached media reports Bates Numbered P003065 – P003078 identifying allegations against Douglas County Jail guards, the details of which are the subject of Plaintiff's pending Requests for Production as well as allegations against a Douglas County Jail guard that he engaged in sexual exploitation of a minor.**

## INTERROGATORY NO. 6:

Do you contend that Defendant Cory Cooper ("Cooper") subjected you to an unreasonable search and an unreasonable seizure at any point on February 10, 2013? If your answer to this Interrogatory is anything other than an unqualified "No" then state:

**EXHIBIT**

**1. b.**

(a)     The precise point in time on February 10, 2013 at which you believed you were
        not free to go about your business;

(b)     Each of Cooper's actions occurring up to the precise point in time on February
        10, 2013 at which you believed you were not free to go about your business
        which made you believe you were not free to go about your business;

(c)     Any other factor - aside from Cooper's actions responsive to sub-part (b), above -
        that led you to believe you were not free to go about your business. This sub-part
        is intended to encompass your own subjective belief(s) about going about your
        business;

(d)     Each of Cooper's actions which you contend constituted an unreasonable search;
        and

(e)     State each and every material fact upon which you contend those of Cooper's
        actions responsive to sub-part (d), above, constituted an unreasonable search.

**ANSWER:    Plaintiff objects to this entire interrogatory (including subparts)
because it is vague, calls for legal conclusions, and it seeks narrative responses or
information that is incapable of being narrowly identified. Without waiving those
objections, Plaintiff states that as stated in Plaintiff's Complaint, she does contend that
Cooper did subject to her unreasonable search and seizure during her entire encounter
with Defendant Cooper on February 10, 2013. Plaintiff specifically responds to the
separate questions as follows:**

**a. Plaintiff contends that she was not free to go about her business from the time
that Defendant Cooper first encountered her until after he had finished abusing his police
powers with the Douglas County Sheriff's Office by coercing her into performing an oral
sex act and she was released from the back of the Douglas County Sheriff's police vehicle,
which he was driving while on duty that night.**

**b. See Plaintiff's Complaint and prior depositions. Plaintiff further states that each
of Cooper's actions toward her were exercises of his police powers through the Douglas
County Sheriff's and that his words and actions made clear to Plaintiff that she was not
free to go about her business until after he had completed his abuse of power.**

**c. As best as Plaintiff can ascertain what this question asks, Plaintiff states that her
subjective belief during the entire encounter with Defendant Cooper on February 10, 2013
as he was exercising his police power was that she was not free to go about her business.**

**d. Plaintiff contends that Defendant Cooper committed an unreasonable search of
her by using his police powers to coerce her into removing her clothing and performed an
unreasonable search of her by searching any bags, clothing, or other touching of her.**

2

    e.  Plaintiff restates her response to paragraph 6(d).

**Investigation continues.**

RESPECTFULLY SUBMITTED,

By:   /s/ Mark Loevy-Reyes
             *Attorney for Plaintiff*

Arthur Loevy
Jon Loevy
Mark Loevy-Reyes
Cindy Tsai
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, Illinois 60607
(312) 243-5900

3

## CERTIFICATE OF SERVICE

I, Mark Loevy- Reyes, an attorney, hereby certify that I served the foregoing Plaintiff's Responses to Defendant Timothy F. Dunning's Second Set of Interrogatories to Plaintiff Megan McGuire on all counsel of record and on Mr. Cooper via electronic mail on October 7, 2016.

/s/ Mark Loevy-Reyes

4

## VERIFICATION

I, Megan McGuire, have reviewed the foregoing Plaintiff's Responses to Defendant Timothy F. Dunning's Second Set of Interrogatories to Plaintiff Megan McGuire and verify that the answers are true and correct to the best of my knowledge, information, and belief.

DATED: _____

_____
Megan McGuire

5

# United States District Court
## District of Nebraska

Megan McGuire, Plaintiff )
)
)
Vs. )  Case No. 8:16-cv-00004
)
)
)
Cory Cooper, )
Timothy Dunning, )
Douglas County. )


**Defendant Cory Cooper's Responses to Timothy Dunning's first requests of interrogatories, request for admissions, and request for production of documents.**


**Defendant Cooper's response to Timothy Dunning's first set of interrogatories:**

To preface the responses of Defendant Cooper, the questions were posed in a way that were leading and implied that a sexual assault occurred. This is not the case and the answers provided are directly in response to the question posed with no admission that any sexual misconduct occurred.

Interrogatory 1:

A) No.
B) No.
C) No.
D) No.

Interrogatory 2:

Yes. The odor of burnt marijuana. Visual observation of marijuana and drug paraphernalia. Admission by both occupants of the vehicle.


**Defendant Cooper's response to Timothy Dunning's first set of requests for admissions:**

To preface the responses by Defendant Cooper, the questions are being answered in chronological order as they are posed. Defendant Cooper is answering the questions as if they were to be used chronologically.



EXHIBIT
1.c.

1) Yes
2) Yes
3) Yes
4) Yes
5) Yes
6) Yes
7) Yes
8) Yes
9) Yes
10) Yes
11) Yes.
12) No. I believe that it was approximately 9 p.m.
13) No. I believe that it was approximately 9 p.m.
14) Yes.
15) Yes.
16) No. I believe that it was approximately 9 p.m.
17) Yes.
18) Yes.
19) Yes.
20) Yes.
21) Yes.
22) Yes.
23) Yes.
24) Yes.
25) Yes.
26) Yes.
27) Yes.
28) Yes.
29) Yes.
30) Yes.
31) Yes.
32) No. I did not observe Megan McGuire in a state of undress.
33) No. I did not observe Megan McGuire in a state of undress.
34) No. I did not observe Megan McGuire in a state of undress.
35) No. I did not observe Megan McGuire in a state of undress.
36) Yes.
37) Yes.
38) Yes.
39) Yes.
40) Yes.
41) Yes.
42) Yes.
43) Yes.
44) Yes.

45) Yes.
46) Yes.


**Defendant Cooper's response to Timothy Dunning's request for production of documents.**

To preface Defendant Cooper's response, to his best knowledge there are in documents in his possession that fall under any of the requested documents. All documentation that Defendant Cooper Is in possession of the State OF Nebraska also had been previously provided through previous court discovery.

1) No documents in Defendant Cooper's possession.
2) No documents in Defendant Cooper's possession.
3) No documents in Defendant Cooper's possession.
4) No documents in Defendant Cooper's possession.
5) No documents in Defendant Cooper's possession.
6) No documents in Defendant Cooper's possession.
7) No documents in Defendant Cooper's possession.
8) No documents in Defendant Cooper's possession.
9) No documents in Defendant Cooper's possession.
10) No documents in Defendant Cooper's possession.
11) No documents in Defendant Cooper's possession.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MEGAN MCGUIRE                        )
                                     )    CASE NO.  8:16 CV 00004
        Plaintiff,                   )
                                     )    **DEFENDANT**
vs.                                  )    **TIMOTHY F. DUNNING'S**
                                     )    **FIRST SET OF REQUESTS**
CORY COOPER, et al.                  )    **FOR ADMISSION TO**
                                     )    **DEFENDANT CORY**
        Defendants.                  )    **COOPER**

To:     Cory Cooper
        10212 V Street
        Omaha, Nebraska 68127

        Defendant Timothy F. Dunning (Dunning), by and through the undersigned Deputy

County Attorneys, hereby serves the following Defendant Timothy F. Dunning's First Set of

Requests for Admission to Defendant Cory Cooper, number 1 through 46, upon Defendant Cory

Cooper  pursuant to Fed. R. Civ. P. 36 and NE Civ. R. 36.1.   Defendant Cory Cooper is advised

that, pursuant to Fed. R. Civ. P. 36(a)(3), he has thirty (30) days from the date he was served to

serve written answers or objections upon Dunning (by and through the undersigned Deputy

County Attorneys).  Defendant Cory Cooper is further advised that, pursuant to Fed. R. Civ. P.

26(e)(1)(A), he may be required to supplement or correct responses to the below Requests for

Admission.

## FIRST SET OF REQUESTS FOR ADMISSION

**REQUEST NO. 1:**   Admit that Exhibit "A" attached hereto is a true and correct copy of Neb.
Rev. Stat. § 28-806 (captioned "Public indecency; penalty").

**ANSWER:**

1

**REQUEST NO. 2:**   Admit that the version of Exhibit "A" attached hereto is the version of Neb. Rev. Stat. § 28-806 (captioned "Public indecency; penalty"), which was in effect on February 10, 2013.

**ANSWER:**

**REQUEST NO. 3:**   If you cannot admit or deny the preceding request, then admit that on February 10, 2013, you believed there was a criminal statute in Nebraska that prohibited sexual activity in public areas.

**ANSWER:**

**REQUEST NO. 4:**   Admit that on February 10, 2013, you were employed as a Deputy Sheriff with the Douglas County Sheriff's Office ("DCSO").

**ANSWER:**

**REQUEST NO. 5:**   Admit that at approximately 8:30 p.m. on February 10, 2013, you were on duty as a Deputy Sheriff employed by DCSO.

**ANSWER:**

**REQUEST NO. 6:**   Admit that at approximately 8:30 p.m. on February 10, 2013, you were working as a Patrol Deputy employed by DCSO.

**ANSWER:**

**REQUEST NO. 7:**   Admit that at approximately 8:30 p.m. on February 10, 2013, you were wearing your DCSO uniform.

**ANSWER:**

**REQUEST NO. 8:**   Admit that on February 10, 2013, DCSO authorized you to wear your DCSO uniform.

**ANSWER:**

**REQUEST NO. 9:**   Admit that at approximately 8:30 p.m. on February 10, 2013, DCSO required you to wear your DCSO uniform while you were on duty.

2

**ANSWER:**

**REQUEST NO. 10:** Admit that at approximately 8:30 p.m. on February 10, 2013, you were operating a patrol vehicle issued by DCSO.

**ANSWER:**

**REQUEST NO. 11:** Admit that you encountered Plaintiff Megan McGuire on February 10, 2013.

**ANSWER:**

**REQUEST NO. 12:** Admit that you encountered Plaintiff Megan McGuire at approximately 8:30 p.m. on February 10, 2013.

**ANSWER:**

**REQUEST NO. 13:** Admit that you encountered Plaintiff Megan McGuire at approximately 8:30 p.m. on February 10, 2013, in a parking area of Zorinsky Lake park.

**ANSWER:**

**REQUEST NO. 14:** Admit that the parking area in which you encountered Plaintiff Megan McGuire on February 10, 2013, is open to members of the public.

**ANSWER:**

**REQUEST NO. 15:** Admit that the parking area in which you encountered Plaintiff Megan McGuire on February 10, 2013, was open to members of the public at the time you encountered Plaintiff Megan McGuire.

**ANSWER:**

**REQUEST NO. 16:** Admit that on February 10, 2013, at approximately 8:30 p.m., you pulled your patrol vehicle into the parking area in which you encountered Plaintiff Megan McGuire.

**ANSWER:**

3

**REQUEST NO. 17:**  Admit that on February 10, 2013, when you pulled your patrol vehicle into the parking area in which you encountered Plaintiff Megan McGuire, you were not operating the patrol vehicle's overhead, flashing lights.

**ANSWER:**


**REQUEST NO. 18:**  Admit that on February 10, 2013, when you pulled your patrol vehicle into the parking area in which you encountered Plaintiff Megan McGuire, you were not sounding the patrol vehicle's sirens.

**ANSWER:**


**REQUEST NO. 19:**  Admit that on February 10, 2013, when you pulled your patrol vehicle into the parking area in which you encountered Plaintiff Megan McGuire, you did not position your patrol vehicle in a manner that would block any other vehicle from leaving the parking area.

**ANSWER:**


**REQUEST NO. 20:**  Admit that on February 10, 2013, when you pulled your patrol vehicle into the parking area in which you encountered Plaintiff Megan McGuire, no other vehicle attempted to leave the parking area.

**ANSWER:**


**REQUEST NO. 21:**  Admit that on February 10, 2013, you parked your patrol vehicle in the parking area in which you encountered Plaintiff Megan McGuire.

**ANSWER:**


**REQUEST NO. 22:**  Admit that on February 10, 2013, when you parked your patrol vehicle in the parking area in which you encountered Plaintiff Megan McGuire, no other vehicle attempted to leave the parking area.

**ANSWER:**


**REQUEST NO. 23:**  Admit that on February 10, 2013, when you parked your patrol vehicle in the parking area in which you encountered Plaintiff Megan McGuire, you did not position your patrol vehicle in a manner that would have blocked any other vehicle from leaving the parking area.

4

**ANSWER:**

**REQUEST NO. 24:** Admit that on February 10, 2013, when you parked your patrol vehicle in the parking area in which you encountered Plaintiff Megan McGuire, you parked your patrol vehicle near a vehicle in which Plaintiff Megan McGuire was an occupant.

**ANSWER:**

**REQUEST NO. 25:** Admit that on February 10, 2013, after parking your patrol vehicle in the parking area in which you encountered Plaintiff Megan McGuire, you got out of your patrol vehicle.

**ANSWER:**

**REQUEST NO. 26:** Admit that on February 10, 2013, after getting out of your patrol vehicle, you did not immediately issue any commands to the persons in the vehicle in which Plaintiff Megan McGuire was an occupant.

**ANSWER:**

**REQUEST NO. 27:** Admit that on February 10, 2013, after getting out of your patrol vehicle, you approached on foot the vehicle in which Plaintiff Megan McGuire was an occupant.

**ANSWER:**

**REQUEST NO. 28:** Admit that on February 10, 2013, as you approached on foot the vehicle in which Plaintiff Megan McGuire was an occupant, you did not issue any commands to the persons inside the vehicle.

**ANSWER:**

**REQUEST NO. 29:** Admit that on February 10, 2013, you approached on foot the passenger side of the vehicle in which Plaintiff Megan McGuire was an occupant.

**ANSWER:**

**REQUEST NO. 30:** Admit that on February 10, 2013, you stood outside of the vehicle in which Plaintiff Megan McGuire was an occupant.

5

**ANSWER:**

**REQUEST NO. 31:**  Admit that on February 10, 2013, when you stood outside of the vehicle in which Plaintiff Megan McGuire was an occupant, you stood where members of the public could also have lawfully stood.

**ANSWER:**

**REQUEST NO. 32:**  Admit that on February 10, 2013, as you stood outside of the vehicle in which Plaintiff Megan McGuire was an occupant, you observed Plaintiff Megan McGuire in a state of partial undress.

**ANSWER:**

**REQUEST NO. 33:**  Admit that on February 10, 2013, as you stood outside of the vehicle in which Plaintiff Megan McGuire was an occupant, you observed that Plaintiff Megan McGuire did not have her pants pulled all the way up to her waist.

**ANSWER:**

**REQUEST NO. 34:**  Admit that on February 10, 2013, as you stood outside of the vehicle in which Plaintiff Megan McGuire was an occupant, you observed that Plaintiff Megan McGuire had the upper portions of her legs exposed.

**ANSWER:**

**REQUEST NO. 35:**  Admit that on February 10, 2013, as you stood outside of  the vehicle in which Plaintiff Megan McGuire was an occupant, you had a particularized and objective basis for suspecting Plaintiff Megan McGuire of engaging in (or having been engaged in) the crime of public indecency.

**ANSWER:**

**REQUEST NO. 36:**  Admit that on February 10, 2013, as you stood outside of the vehicle in which Plaintiff Megan McGuire was an occupant, you asked Plaintiff Megan McGuire to step out of the vehicle she was in.

**ANSWER:**

6

**REQUEST NO. 37:** Admit that Exhibit "B" attached hereto is a true and correct copy of Neb. Rev. Stat. § 28-416 (captioned "Prohibited acts; violations; penalties").

**ANSWER:**

**REQUEST NO. 38:** Admit that the version of Exhibit "B" attached hereto is the version of Neb. Rev. Stat. § 28-416 (captioned "Prohibited acts; violations; penalties"), which was in effect on February 10, 2013.

**ANSWER:**

**REQUEST NO. 39:** If you cannot admit or deny the preceding request, then admit that on February 10, 2013, you believed there was a criminal statute in Nebraska that prohibited possession of marijuana.

**ANSWER:**

**REQUEST NO. 40:** Admit that on February 10, 2013, after you asked Plaintiff Megan McGuire to step out of the vehicle she was in, you had a particularized and objective basis for suspecting Ms. McGuire of engaging in (or having been engaged in) the crime of possession of marijuana weighing one ounce or less.

**ANSWER:**

**REQUEST NO. 41:** Admit that on February 10, 2013, after you asked Plaintiff Megan McGuire to step out of the vehicle she was in, you had a particularized and objective basis for also suspecting the man in the vehicle with Plaintiff Megan McGuire of engaging in (or having been engaged in) the crime of possession of marijuana weighing one ounce or less.

**ANSWER:**

**REQUEST NO. 42:** Admit that Exhibit "C" attached hereto is a true and correct copy of Neb. Rev. Stat. § 28-441 (captioned "Drug paraphernalia; use or possession; unlawful; penalty").

**ANSWER:**

**REQUEST NO. 43:** Admit that the version of Exhibit "C" attached hereto is the version of Neb. Rev. Stat. § 28-441 (captioned "Drug paraphernalia; use or possession; unlawful; penalty"), which was in effect on February 10, 2013.

7

**ANSWER:**

**REQUEST NO. 44:** If you cannot admit or deny the preceding request, then admit that on February 10, 2013, you believed there was a criminal statute in Nebraska that prohibited use or possession of drug paraphernalia.

**ANSWER:**

**REQUEST NO. 45:** Admit that on February 10, 2013, you had a particularized and objective basis for suspecting Plaintiff Megan McGuire of engaging in (or having been engaged in) the crime of use or possession of drug paraphernalia.

**ANSWER:**

**REQUEST NO. 46:** Admit that on February 10, 2013, you had a particularized and objective basis for also suspecting the man in the vehicle with Plaintiff Megan McGuire of engaging in (or having been engaged in) the crime of use or possession of drug paraphernalia.

**ANSWER:**

DATED this __7th__ day of June, 2016.

TIMOTHY F. DUNNING, Defendant.

DONALD W. KLEINE,
Douglas County Attorney.

BY: ___#20978___

Timothy K. Dolan #20978
Meghan M. Bothe #25208
Deputy County Attorneys
909 Civic Center
Omaha, NE 68183
T: (402) 444-7622
F: (402) 444-6817
tim.dolan@douglascounty-ne.gov
meghan.bothe@douglascounty-ne.gov

**CERTIFICATE OF SERVICE**

8

I hereby certify that on June **7ᵗʰ**_____, 2016, I mailed a copy of the above Defendant Timothy F. Dunning's First Set of Requests for Admission to Defendant Cory Cooper by First Class United States Mail, postage prepaid, to the following:

Mr. Cory Cooper
10212 V Street
Omaha, Nebraska 68127

Arthur Loevy
Cindy Tsai
Jon Loevy
Mark Loevy-Reyes
LOEVY, LOEVY LAW FIRM
312 North May Street, Suite 100
Chicago, IL 60607
T: (312) 243-5900
F: (312) 243-5902
arthur@loevy.com
cindy@loevy.com
jon@loevy.com
mark@loevy.com

_#20978_

9

**28-806. Public indecency; penalty.**

(1) A person, eighteen years of age or over, commits public indecency if such person performs or procures, or assists any other person to perform, in a public place and where the conduct may reasonably be expected to be viewed by members of the public:

(a) An act of sexual penetration; or

(b) An exposure of the genitals of the body done with intent to affront or alarm any person; or

(c) A lewd fondling or caressing of the body of another person of the same or opposite sex.

(2) Public indecency is a Class II misdemeanor.

**Source:** Laws 1977, LB 38, § 162.



## DRUGS AND NARCOTICS §28-416

(A) Controlled substances listed in Schedule II, III, IV, or V of section 28-405 may be destroyed by a pharmacy inspector, by a reverse distributor, or by the federal Drug Enforcement Administration. Upon destruction, any forms required by the administration to document such destruction shall be completed;

(B) Liquid controlled substances in opened containers which originally contained fifty milliliters or less or compounded liquid controlled substances within the facility where they were compounded may be destroyed if witnessed by two individuals credentialed under the Uniform Credentialing Act and designated by the facility and recorded in accordance with subsection (4) of section 28-411; or

(C) Solid controlled substances in opened unit-dose containers or which have been adulterated within a hospital where they were to be administered to patients at such hospital may be destroyed if witnessed by two individuals credentialed under the Uniform Credentialing Act and designated by the hospital and recorded in accordance with subsection (4) of section 28-411.

(iii) When the owner is a patient, such owner may transfer the controlled substances to a pharmacy for immediate destruction by two individuals credentialed under the Uniform Credentialing Act and designated by the pharmacy.

(iv) When the owner is a resident of a long-term care facility or hospital, a controlled substance listed in Schedule II, III, IV, or V of section 28-405 shall be destroyed by two individuals credentialed under the Uniform Credentialing Act and designated by the facility or hospital.

(g) Before dispensing any controlled substance listed in Schedule II, III, IV, or V of section 28-405, the dispensing practitioner shall affix a label to the container in which the controlled substance is dispensed. Such label shall bear the name and address of the pharmacy or dispensing practitioner, the name of the patient, the date of filling, the consecutive number of the prescription under which it is recorded in the practitioner's prescription records, the name of the prescribing practitioner, and the directions for use of the controlled substance. Unless the prescribing practitioner writes "do not label" or words of similar import on the original written prescription or so designates in an oral prescription, such label shall also bear the name of the controlled substance.

**Source:** Laws 1977, LB 38, § 74; Laws 1988, LB 273, § 5; Laws 1995, LB 406, § 7; Laws 1996, LB 1108, § 4; Laws 1997, LB 307, § 8; Laws 1999, LB 594, § 4; Laws 2000, LB 819, § 65; Laws 2001, LB 398, § 12; Laws 2004, LB 1005, § 2; Laws 2005, LB 382, § 3; Laws 2007, LB463, § 1122; Laws 2009, LB195, § 3; Laws 2011, LB179, § 1.

Cross References

Uniform Credentialing Act, see section 38-101.

### 28-416 Prohibited acts; violations; penalties.

(1) Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance; or (b) to create, distribute, or possess with intent to distribute a counterfeit controlled substance.



P·1

(2) Except as provided in subsections (4), (5), (7), (8), (9), and (10) of this section, any person who violates subsection (1) of this section with respect to: (a) A controlled substance classified in Schedule I, II, or III of section 28-405 which is an exceptionally hazardous drug shall be guilty of a Class II felony; (b) any other controlled substance classified in Schedule I, II, or III of section 28-405 shall be guilty of a Class III felony; or (c) a controlled substance classified in Schedule IV or V of section 28-405 shall be guilty of a Class IIIA felony.

(3) A person knowingly or intentionally possessing a controlled substance, except marijuana or any substance containing a quantifiable amount of the substances, chemicals, or compounds described, defined, or delineated in subdivision (c)(35) of Schedule I of section 28-405, unless such substance was obtained directly or pursuant to a medical order issued by a practitioner authorized to prescribe while acting in the course of his or her professional practice, or except as otherwise authorized by the act, shall be guilty of a Class IV felony.

(4)(a) Except as authorized by the Uniform Controlled Substances Act, any person eighteen years of age or older who knowingly or intentionally manufactures, distributes, delivers, dispenses, or possesses with intent to manufacture, distribute, deliver, or dispense a controlled substance or a counterfeit controlled substance (i) to a person under the age of eighteen years, (ii) in, on, or within one thousand feet of the real property comprising a public or private elementary, vocational, or secondary school, a community college, a public or private college, junior college, or university, or a playground, or (iii) within one hundred feet of a public or private youth center, public swimming pool, or video arcade facility shall be punished by the next higher penalty classification than the penalty prescribed in subsection (2), (7), (8), (9), or (10) of this section, depending upon the controlled substance involved, for the first violation and for a second or subsequent violation shall be punished by the next higher penalty classification than that prescribed for a first violation of this subsection, but in no event shall such person be punished by a penalty greater than a Class IB felony.

(b) For purposes of this subsection:

(i) Playground shall mean any outdoor facility, including any parking lot appurtenant to the facility, intended for recreation, open to the public, and with any portion containing three or more apparatus intended for the recreation of children, including sliding boards, swingsets, and teeterboards;

(ii) Video arcade facility shall mean any facility legally accessible to persons under eighteen years of age, intended primarily for the use of pinball and video machines for amusement, and containing a minimum of ten pinball or video machines; and

(iii) Youth center shall mean any recreational facility or gymnasium, including any parking lot appurtenant to the facility or gymnasium, intended primarily for use by persons under eighteen years of age which regularly provides athletic, civic, or cultural activities.

(5)(a) Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person eighteen years of age or older to knowingly and intentionally employ, hire, use, cause, persuade, coax, induce, entice, seduce, or coerce any person under the age of eighteen years to manufacture, transport, distribute, carry, deliver, dispense, prepare for delivery, offer for delivery, or

P-2

possess with intent to do the same a controlled substance or a counterfeit controlled substance.

(b) Except as authorized by the Uniform Controlled Substances Act, it shall be unlawful for any person eighteen years of age or older to knowingly and intentionally employ, hire, use, cause, persuade, coax, induce, entice, seduce, or coerce any person under the age of eighteen years to aid and abet any person in the manufacture, transportation, distribution, carrying, delivery, dispensing, preparation for delivery, offering for delivery, or possession with intent to do the same of a controlled substance or a counterfeit controlled substance.

(c) Any person who violates subdivision (a) or (b) of this subsection shall be punished by the next higher penalty classification than the penalty prescribed in subsection (2), (7), (8), (9), or (10) of this section, depending upon the controlled substance involved, for the first violation and for a second or subsequent violation shall be punished by the next higher penalty classification than that prescribed for a first violation of this subsection, but in no event shall such person be punished by a penalty greater than a Class IB felony.

(6) It shall not be a defense to prosecution for violation of subsection (4) or (5) of this section that the defendant did not know the age of the person through whom the defendant violated such subsection.

(7) Any person who violates subsection (1) of this section with respect to cocaine or any mixture or substance containing a detectable amount of cocaine in a quantity of:

(a) One hundred forty grams or more shall be guilty of a Class IB felony;

(b) At least twenty-eight grams but less than one hundred forty grams shall be guilty of a Class IC felony; or

(c) At least ten grams but less than twenty-eight grams shall be guilty of a Class ID felony.

(8) Any person who violates subsection (1) of this section with respect to base cocaine (crack) or any mixture or substance containing a detectable amount of base cocaine in a quantity of:

(a) One hundred forty grams or more shall be guilty of a Class IB felony;

(b) At least twenty-eight grams but less than one hundred forty grams shall be guilty of a Class IC felony; or

(c) At least ten grams but less than twenty-eight grams shall be guilty of a Class ID felony.

(9) Any person who violates subsection (1) of this section with respect to heroin or any mixture or substance containing a detectable amount of heroin in a quantity of:

(a) One hundred forty grams or more shall be guilty of a Class IB felony;

(b) At least twenty-eight grams but less than one hundred forty grams shall be guilty of a Class IC felony; or

(c) At least ten grams but less than twenty-eight grams shall be guilty of a Class ID felony.

(10) Any person who violates subsection (1) of this section with respect to amphetamine, its salts, optical isomers, and salts of its isomers, or with respect to methamphetamine, its salts, optical isomers, and salts of its isomers, in a quantity of:

p. 3

(a) One hundred forty grams or more shall be guilty of a Class IB felony;

(b) At least twenty-eight grams but less than one hundred forty grams shall be guilty of a Class IC felony; or

(c) At least ten grams but less than twenty-eight grams shall be guilty of a Class ID felony.

(11) Any person knowingly or intentionally possessing marijuana weighing more than one ounce but not more than one pound shall be guilty of a Class III misdemeanor.

(12) Any person knowingly or intentionally possessing marijuana weighing more than one pound shall be guilty of a Class IV felony.

(13) Any person knowingly or intentionally possessing marijuana weighing one ounce or less or any substance containing a quantifiable amount of the substances, chemicals, or compounds described, defined, or delineated in subdivision (c)(35) of Schedule I of section 28-405 shall:

(a) For the first offense, be guilty of an infraction, receive a citation, be fined three hundred dollars, and be assigned to attend a course as prescribed in section 29-433 if the judge determines that attending such course is in the best interest of the individual defendant;

(b) For the second offense, be guilty of a Class IV misdemeanor, receive a citation, and be fined four hundred dollars and may be imprisoned not to exceed five days; and

(c) For the third and all subsequent offenses, be guilty of a Class IIIA misdemeanor, receive a citation, be fined five hundred dollars, and be imprisoned not to exceed seven days.

(14) Any person convicted of violating this section, if placed on probation, shall, as a condition of probation, satisfactorily attend and complete appropriate treatment and counseling on drug abuse provided by a program authorized under the Nebraska Behavioral Health Services Act or other licensed drug treatment facility.

(15) Any person convicted of violating this section, if sentenced to the Department of Correctional Services, shall attend appropriate treatment and counseling on drug abuse.

(16) Any person knowingly or intentionally possessing a firearm while in violation of subsection (1) of this section shall be punished by the next higher penalty classification than the penalty prescribed in subsection (2), (7), (8), (9), or (10) of this section, but in no event shall such person be punished by a penalty greater than a Class IB felony.

(17) A person knowingly or intentionally in possession of money used or intended to be used to facilitate a violation of subsection (1) of this section shall be guilty of a Class IV felony.

(18) In addition to the penalties provided in this section:

(a) If the person convicted or adjudicated of violating this section is eighteen years of age or younger and has one or more licenses or permits issued under the Motor Vehicle Operator's License Act:

(i) For the first offense, the court may, as a part of the judgment of conviction or adjudication, (A) impound any such licenses or permits for thirty days and (B) require such person to attend a drug education class;

P-4

(ii) For a second offense, the court may, as a part of the judgment of conviction or adjudication, (A) impound any such licenses or permits for ninety days and (B) require such person to complete no fewer than twenty and no more than forty hours of community service and to attend a drug education class; and

(iii) For a third or subsequent offense, the court may, as a part of the judgment of conviction or adjudication, (A) impound any such licenses or permits for twelve months and (B) require such person to complete no fewer than sixty hours of community service, to attend a drug education class, and to submit to a drug assessment by a licensed alcohol and drug counselor; and

(b) If the person convicted or adjudicated of violating this section is eighteen years of age or younger and does not have a permit or license issued under the Motor Vehicle Operator's License Act:

(i) For the first offense, the court may, as part of the judgment of conviction or adjudication, (A) prohibit such person from obtaining any permit or any license pursuant to the act for which such person would otherwise be eligible until thirty days after the date of such order and (B) require such person to attend a drug education class;

(ii) For a second offense, the court may, as part of the judgment of conviction or adjudication, (A) prohibit such person from obtaining any permit or any license pursuant to the act for which such person would otherwise be eligible until ninety days after the date of such order and (B) require such person to complete no fewer than twenty hours and no more than forty hours of community service and to attend a drug education class; and

(iii) For a third or subsequent offense, the court may, as part of the judgment of conviction or adjudication, (A) prohibit such person from obtaining any permit or any license pursuant to the act for which such person would otherwise be eligible until twelve months after the date of such order and (B) require such person to complete no fewer than sixty hours of community service, to attend a drug education class, and to submit to a drug assessment by a licensed alcohol and drug counselor.

A copy of an abstract of the court's conviction or adjudication shall be transmitted to the Director of Motor Vehicles pursuant to sections 60-497.01 to 60-497.04 if a license or permit is impounded or a juvenile is prohibited from obtaining a license or permit under this subsection.

Source: Laws 1977, LB 38, § 76; Laws 1978, LB 808, § 2; Laws 1980, LB 696, § 3; Laws 1985, LB 406, § 4; Laws 1986, LB 504, § 1; Laws 1989, LB 592, § 2; Laws 1991, LB 742, § 1; Laws 1993, LB 117, § 2; Laws 1995, LB 371, § 6; Laws 1997, LB 364, § 8; Laws 1999, LB 299, § 1; Laws 2001, LB 398, § 14; Laws 2003, LB 46, § 1; Laws 2004, LB 1083, § 86; Laws 2005, LB 117, § 3; Laws 2008, LB844, § 1; Laws 2010, LB800, § 4; Laws 2011, LB19, § 2; Laws 2011, LB463, § 1.

**Cross References**

Motor Vehicle Operator's License Act, see section 60-462.
Nebraska Behavioral Health Services Act, see section 71-801.

**28-421 Act, exceptions.**

P-5

**28-441. Drug paraphernalia; use or possession; unlawful; penalty.**

(1) It shall be unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of sections 28-101, 28-431, and 28-439 to 28-444.

(2) Any person who violates this section shall be guilty of an infraction.

**Source:** Laws 1980, LB 991, § 3.

