# UNITED STATES DISTRICT COURT
# DISTRICT OF NEBRASKA

| | |
|---|---|
| MEGAN MCGUIRE, | ) |
| | ) Case No. 8:16-cv-00004 |
| Plaintiff, | ) |
| | ) |
| v. | ) Senior Judge Joseph Bataillon |
| | ) |
| CORY COOPER, TIMOTHY DUNNING, | ) Magistrate Judge Susan M. Bazis |
| Individually and in his official capacity as | ) |
| Sheriff of Douglas County, Nebraska, and | ) |
| DOUGLAS COUNTY, | ) |
| | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS TIMOTHY F. DUNNING'S
AND DOUGLAS COUNTY'S MOTIONS FOR SUMMARY JUDGMENT**

# EXHIBIT 72



# Douglas County Sheriff's Office
## Office of Professional Standards
## 2013 Administrative Investigations
## Annual Summary

Date: 13 Jan 14

To: Sheriff Timothy F. Dunning

From: Lt. Matt Martin S298

## PURPOSE

The Commission on Accreditation for Law Enforcement Agencies' (CALEA) Standard 52.1.5 requires an annual statistical summary of internal affairs investigations. This report complies with the standard and summarizes the administrative investigations for the year 2013. Furthermore, this report provides a graphical comparison between 2013 and the previous three years. The raw data was collected using the Administrative Investigative Management (AIM) software and data collected from the Sheriff's Executive Secretary's Internal Affairs numbering database. This report is for the time period of 01 January 2013 through 31 December 2013.

## 2013 ADMINISTRATIVE INVESTIGATIONS

### 2013 Summary

According to, AIM, and the Executive Secretary's database during 2013, there were 36 cases investigated. In 2012 there were 20 cases investigated. Thirty six cases were investigated in 2011 and 32 cases were investigated in 2010. The increase from 2012 to 2013 is 16 cases. 2013 had the same number of cases as 2011 and four more cases than 2010. It should also be noted that 20 cases in 2012 is an all time low since the tracking of complaints has began. The 36 cases in 2013 consisted of 10 citizen complaints and 26 internal complaints or reviews. In 2012 the 20 cases in 2012 consisted of eight citizen complaints and 12 internal complaints or reviews. In 2011 the 36 cases consisted of nine citizen complaints and 27 internal complaints or reviews. In 2010 there were 32 cases consisting of 15 citizen complaints and 17 internal complaints or reviews.

In 2013, 29 cases involved classified employees and seven involved civilian employees. In 2012, 16 cases involved classified employees and four cases involved civilian employees. In 2011, 28 cases involved classified employees and eight cases involved civilian employees. In 2010, 24 cases involved classified employees and eight cases involved civilian employees of the department. In 2013, 80.5% of all cases involved classified employees while 19.5% involved civilian employees. In 2012, 80% of all

cases involved classified employees and 20% involved civilian employees. In 2011, 78% of all cases involved classified employees and 22% involved civilian employees. In 2010 75% of all investigations involved classified employees and 25% involved civilian employees.

In 2013, the Office of Professional Standards investigated 15 cases as compared to nine in 2012, 17 in 2011 and 17 in 2010. In 2013, line supervisors/command investigated the other 21 cases compared with 11 in 2012, 19 cases in 2011, and 15 in 2010. The number of externally generated complaints in 2013 was ten compared to eight in 2012, nine in 2011 and 15 in 2010.

Chart 1 provides a comparison between 2013 and the five previous calendar years.

**CHART 1**

**Administrative Investigations**
**2013 v. Previous Years**



## **Dispositions**

According to General Order 14-2013, each case is concluded with a recommended disposition. These dispositions are: Sustained; Sustained on Policy; Not Sustained; Unfounded; or Exonerated.

A Sustained disposition indicates that an investigation supported the conclusion that a member engaged in the alleged conduct and violated Department rules and regulations.

Not Sustained is a recommendation that there is no preponderance of the evidence to either prove or disprove the alleged misconduct.

Exonerated means that the incident did occur; however, the Department member's actions were legal, proper and reasonable.

An Unfounded disposition indicates that an investigation supports the conclusion that the member did not engage in the alleged misconduct and did not violate Department Rules and Regulations—that there is no basis for the complaint.

Sustained on Policy suggests that an investigation disclosed a lapse in Department policy and procedure rather than misconduct by a member.

Chart #2 is a graphical illustration of the 2013 dispositions of both OPS and Bureau Investigations. In Chart 2, it is evident that most investigations come to a conclusion that the allegations are either *sustained* or *exonerated*. In 2013, 55.5% of the cases were *sustained* and 22.9% of the cases were *exonerated*. In 78.4% of the cases a finding of *sustained* or *exonerated* was found. The next highest category was *unfounded* which occurred in 11.8% of the cases. A finding of *Not Sustained* was found in 9% of the cases. In .8% of the cases a finding of *Sustained on Policy* was found. Percentages of findings such as this hopefully led to closure on the part of the employee and where applicable the complainant. In instances where a finding of *Sustained on Policy* was made, suggestions for policy modification if necessary were forwarded.

**CHART 2**



In analyzing the data from Chart 3 and Chart 4 below, it is apparent that *sustained* findings generally occur in approximately 50% of cases and *exonerated* findings occur in around 30% of the cases. In 2012, it is apparent that the numbers reversed and 35% of cases were *sustained* and 55% were *exonerated*.

Chart 3 compares the case dispositions of the calendar years 2009 through 2013. The comparison is by percentage to the total number of cases (for each year). Chart 4 utilizes the same data, but illustrates a side-by-side comparison of each year.

## CHART 3
## Case Disposition
## Annual Comparison By Disposition



## CHART 4
## Case Disposition
## Annual Comparison By Disposition



2012 was an anomaly with a higher than normal *exonerated* rate and a lower than normal *sustained* rate. In 2013, the percentage of *sustained* complaints was 55.5% which is slightly higher than most years. In 2012, the percentage of *sustained* complaints was 35%, which was much lower than any other year evaluated. The years 2009, 2010, 2011 and 2013 averaged render a *sustained* rate of 52.3%. When 2012 is averaged in, the average *sustained* rate was 48%. 2013 had a higher *sustained* rate, but it is not excessively high when compared to years excluding 2012.

The *not sustained* rate in 2013 is slightly higher than other years, however has yet to reach a 10% deviation from the low. The *unfounded* rate is consistent with 2009 through 2011, but all years are higher than 2012. The *sustained on policy* rate showed no major deviations form the normal average.

The *exonerated* rate is lower than 2012, yet does not deviate greatly from 2009 through 2011. Deviations from year to year are indicative of variables in cases and the sample size. For example, in 2012 there were fewer cases than in most years. With this, in a smaller sample year, one case being *exonerated* as opposed to another finding has a greater impact percentage wise on the results.

OPS investigated 15 cases in 2013. Seven cases or 46.6% were *sustained*. *Exonerated* was found in 3.25 cases or 21.67% of the cases. *Not Sustained* was found in 2.25 or 15% of the cases. *Unfounded* was recommended in 2.25 cases for 15% of the cases. *Sustained on Policy* was found in .25 cases or 1.6% of the cases. Three cases or 20% were *exonerated*.

In 2012, *sustained* was found in one case or 11.1%. *Exonerated* was found in 66.7% of the cases. In 2011, there was a finding of *sustained* in 32.4% of cases and a finding of *exonerated* in 67.6% of cases. In 2010, 35.29% of cases were *sustained*. In 2009, the percentage was 35.7% and the percentage of *sustained* cases in 2008 was 53%. In 2007, *sustained* was recommended in 43% of the cases.

The *sustained* rate among citizen complaints was 22.2%, and the percentage of *exonerated* citizen complaints was 36.1%. The *unfounded* rate for citizen's complaints was 25%. The *not sustained* rate for citizen complaints investigated by OPS was 13.8%. The s*ustained on policy* rate for OPS citizen complaint investigations was 2.77%. Internal complaints by OPS had a *sustained* rate of 83.3% and *not sustained* was found in 16.7% of the cases.

In one case, the father of a man who was placed in Emergency Protective Custody completed a citizen complaint. In the investigation of the complaint, four items were complained about. Of the four complaints, one was *not sustained*, one was *unfounded*, one was *sustained on policy*, and one was *exonerated*. In the two *unfounded* complaints, one subject complained about deputies conduct. When the investigation was conducted, it was learned that the complainant was upset about officers from other agencies which were present. The complainant did not complain about actions by any DCSO deputies. In the other *unfounded* complaint an inmate in prison for sexually assaulting his teenage daughter misread the State DNA law and complained in hopes that a the complaint would bear some weight with the Federal Court where he was trying to appeal his conviction in hopes of being released from jail.

Chart 5 lists the number of external (citizen complaints) and internal cases investigated by both OPS and the Bureaus along with the dispositions of the cases for the years 2011 through 2013.

**Chart 5**
**Complaints and Internal Affairs Investigations**

|  | 2011 | 2012 | 2013 |
|---|---|---|---|
| **Citizen Complaint** | 9 | 8 | 10 |
| Sustained | 1 | 0 | 3 |
| Not Sustained | 0 | 1 | 1.25 |
| Unfounded | 0 | 1 | 2.25 |
| Exonerated | 8 | 6 | 3.25 |
| Sustained on Policy | 0 | 0 | .25 |
| **Internal Complaint** | 27 | 12 | 26 |
| Sustained | 16.5 | 7 | 17 |
| Not Sustained | 0 | 0 | 2 |
| Unfounded | 4 | 0 | 2 |
| Exonerated | 5.5 | 5 | 5 |
| Sustained on Policy | 1 | 0 | 0 |

## Case Load Trend

Lt Martin used Microsoft Excel to demonstrate the predicted number of cases through 2020 using total case numbers for only cases investigated by OPS from 2010 through 2013. The calculation demonstrated an overall decreasing trend with an increase in 2014. It appears as if the decrease in cases from 2012 had a very large impact upon the trend which was displayed in the previous year's annual report. A more reliable indicator would probably be an average of 12 to 18 cases per year with occasional highs reaching into the low 20's and lows occasionally dipping into single digits. Chart 6 further illustrates this trend.

**CHART 6**



## Cases Per Bureau

The DCSO consists of four Bureaus—the Administrative Services Bureau (ASB), the Criminal Investigation Bureau (CIB), the Court Services Bureau (CSB), and the Uniform Services Bureau (USB). The Bureaus rank in descending order based upon the number of employees as follows: 1) CSB; 2) USB; 3) CIB; and, 4) ASB. As expected, the Bureaus with the highest 'population' generated the greatest number of complaints/ bureau investigations. In 2013, USB had a larger number of cases than any other bureau as seen in Chart 7. Chart 7 also compares the number of cases for each bureau in 2013, 2012, 2011, and 2010. In reviewing the data for CSB, the number of investigations averages 12.75 cases per year. While 2011 was an abnormally high year, 2012 was a low year. The average of 12 cases per year is indicative of this being the largest bureau. USB averages 11.25 cases per year and is the second largest bureau. For USB, 2013 was a high year while 212 was a low year. CIB is the next largest bureau and it averages 4.25 cases per year. In USB, 2012 was a low year and 2010 was a high year. ASB is the smallest bureau it averages the smallest number of cases at 2.75 per year. The basic conclusion is that generally the larger the bureau, the

more complaints or investigations there will be with most years falling into a reasonable range and occasionally have an unusually high or low year. Due to the nature of the assignment, USB may at times exceed CSB.

## CHART 7

**Cases Per Bureau**



### 2013 Use of Force Complaints

In 2013, the percentage of use of force complaints was 20% while in 2012 it was 33%. In 2011, the percentage of use of force complaints was 11.76 which is the same as it was in 2010. While the use of force complaint percentage saw a reduction, the number of use of force complaints remained the same as 2012. The average use of force complaints investigated per year is 2.4. This equation included only the total cases investigated by OPS. When Bureau/Division's cases are added, the percentage of use of force complaints in relation to total cases investigated decreases to 8.3%. Table 1 illustrates the comparison between 2013 and the previous five calendar years.

*Table 1: Use of Force Complaints*

| Year | Total Cases | Use of Force Allegations | % Use of Force Allegations |
|---|---|---|---|
| 2013 | 15 | 3 | 20% |
| 2012 | 9 | 3 | 33% |
| 2011 | 17 | 2 | 11.76% |
| 2010 | 17 | 2 | 11.76% |
| 2009 | 14 | 2 | 14% |

In 2013, there were three use-of-force investigations by OPS. The first use of force incident investigated revolved around the arrest of a subject who is a known steroid dealer and a large human. The subject was drinking with friends on New Years Eve and was bothered by another person in the bar. At closing time, around 0200 on New Years Day, deputies arrived pursuant to a disturbance call. The subject was walking away from deputies and would not stop to participate in the assault investigation. When the subject stopped, he was very agitated. The subject was placed under arrest for obstructing and as he was being handcuffed turned to strike the OPD Officer attempting to handcuff him. The initial responding deputy had his Taser drawn and discharged the Taser prior to the subject being able to strike the officer. The incident was captured on the OPD Dashcam. This was a citizen's complaint.

In the second incident, the subject of an EPC complained that deputies used excessive force by pointing guns at him and placing handcuffs on too tight. This subject lived within one block of a school which was preparing to release students for the day. The subject had threatened to shoot himself and the school was placed on lock down. The deputies did have their weapons drawn and pointed at the subject as they talked the person out of the house and handcuffed the person. Photos of the handcuff marks did not show any injuries inconsistent with normal handcuffing and nurses attending to the subject advised that the subject had no loss of feeling in his hands. This was a citizen complaint.

In the third incident a deputy encountered a male party passed out, laying in the middle of the street. When the deputy attempted to wake the party the subject rolled quickly to the deputy as if attempting to grab the deputy's leg. The deputy punched the subject three times until the subject let go of the deputy. This was an internal complaint and cruiser video was available.

Table 2 represents any complaints filed regarding biased based complaints over the last three years. The table reveals there have been two complaints thus far over the last three years. In the most recent complaint from 2011, a motorist felt that he was stopped due to his race being white so the numbers would not be so skewed when the K9 unit stopped minority drivers. In this incident the driver was speeding on I-80 enroute to a drug court hearing in Wyoming and then driving to his home in California. The deputy was exonerated regarding the racial bias.

### Table 2: Biased Based Policing Complaints

| Complaints from: | 2011 | 2012 | 2013 |
|---|---|---|---|
| Traffic contacts | 1 | 0 | 0 |
| Field contacts | 0 | 0 | 0 |
| Asset Forfeiture | 0 | 0 | 0 |

**Miscellaneous:**

1) There were no cases requiring the administration of medical or laboratory examinations;

2) One incident listed above resulted in injury to the subject. In this case first aid was rendered and he was medically cleared prior to being admitted to jail. Pictures were taken of the subject.

3) There were no cases requiring photographs to be taken of employees;

4) There were no cases in which an employee was directed to participate in a physical line-up.

5) There were no cases requiring an employee to submit a financial disclosure statement.

6) There were no cases in which an employee was directed to submit to an instrument for the detection of deception.

## Summary:

In 2013, cases increased compared to 2012 and returned to the normal levels as displayed in 2011 and 2010. The current projection indicates that OPS complaint investigations will maintain a somewhat constant level while slowly trending higher in the future. Use of force complaints was higher than the average, but not substantially higher than the average of previous years. There was also an increase in the number of sustained cases and a decrease in exonerated cases when compared to prior years. Increases and decreases appear much larger when the sample number decreases. Recommendations of findings in investigations are on a case by case basis depending upon the elements of the specific case and not based upon maintaining an average for year end reports.

When analyzing citizen complaints, one constant was noted. On occasion a brief explanation on the part of the employee regarding the reasons for their actions may lower the citizen complaints or inquiries into the employee's actions. No other obvious trends were evident when comparing types of complaints to the previous years. No recommendations for change in policy, training or equipment is being recommended as changes are addressed throughout the year when potential problems are found.

Respectfully Submitted By:

Lt. Matt Martin S298
Office of Professional Standards
Date: 13 Jan 14

Cc: Chief Deputy Thomas Wheeler
Policy Coordinator Rob Sofie