IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MEGAN MCGUIRE | ) |
| | )          CASE NO.  8:16 CV 00004 |
| Plaintiff, | ) |
| | ) **DEFENDANTS TIMOTHY F.** |
| vs. | ) **DUNNING'S AND DOUGLAS** |
| | ) **COUNTY, NEBRASKA'S JOINT** |
| CORY COOPER, et al. | ) **REPLY BRIEF IN SUPPORT OF** |
| | ) **SUMMARY JUDGMENT** |
| Defendants. | ) |

In addition to the arguments and substantial, germane legal authority set forth in their respective briefs in support of summary judgment, Defendants Timothy F. Dunning ("Dunning") and Douglas County, Nebraska ("Douglas County") (the "County Defendants") offer this Joint Reply to Ms. McGuire's argument in opposition to their motions for summary judgment.

## FACTS

See the County Defendants' response to Plaintiff's Statement of Facts in Document 131, which is attached as an appendix to this brief.

## ARGUMENT

Cooper's rape permeates Ms. McGuire's defenses of each one of her claims against the County Defendants.  Whether his egregious violation of her personal integrity is argued under the Fourth Amendment, the Equal Protection Clause, or the Substantive Due Process Clause, the County Defendants cannot be liable because Ms. McGuire's argument applied the wrong legal standard to argue these Defendants' notice of a need for more or different training and supervision throughout DCSO.  Notice is the touchstone of deliberate indifference. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2103).  Accepting Ms. McGuire's application of the wrong legal standard for imputing notice would result in imposition of liability

1

any time a defendant failed to implement a policy that would have prevented an unconstitutional act by an employee otherwise left to his own discretion – a proposition the Eighth Circuit has expressly rejected.  *Id*. (quoting *Szabla v. City of Brooklyn Park, MN*, 486 F.3d 385, 395 (8th Cir. 2007)).  Ms. McGuire followed five (5) steps to work her way around the Eighth Circuit's rule.

1. She introduced Mr. Tremblay and the International Association of Chiefs of Police ("IACP") June, 2011 Executive Guideline relating to law enforcement sexual misconduct, along with the training and associated supervision program Mr. Tremblay advocates.

2. In place of the legal standard the Eighth Circuit applies to notice when substantive due process claims are at issue and without citing any supporting legal authority, she substituted the much more inclusive "sexual misconduct" standard Mr. Tremblay bases his conclusions upon.  While the Eighth Circuit's true legal standard requires notice of a widespread pattern of "similarly egregious" constitutional violations (*S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015)), "sexual misconduct" is a far more inclusive standard, covering everything from a one-time inappropriate remark all the way to forcible rape.

3. Having substituted the much more inclusive "sexual misconduct" standard in the place of the actual, current Eighth Circuit standard requiring notice of a widespread pattern of "similarly egregious" constitutional violations, she and Mr. Tremblay analyzed prior citizen complaints Dunning knew of according to the much lower, more inclusive standard.

4. She concluded that all incidents met the much more inclusive "sexual misconduct" standard (Document 131, p. 9)[1] without any discussion of the actual Eighth Circuit substantive due process standard for notice in relation to the prior incidents and without regard to whether the complaints actually had merit (contrast *Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 799 (8th Cir. 1998).

5. Having concluded that these prior instances of "sexual misconduct" imputed to Dunning before February 10, 2013 notice that the Constitution required him to implement more or different training and supervision of his subordinates, she concluded his failure to implement the kind of training and supervision Mr. Tremblay advocates was deliberate indifference that caused Cooper to rape her even though Cooper testified to knowing it was a crime and that he would be fired from DCSO if they learned he had done so. Cooper Deposition at 412:12 – 414:9.

---

[1] Please note: the County Defendants' references to page numbers in Document 131 (Plaintiff's Consolidated response to Defendants Timothy F. Dunning's and Douglas County's Motions for Summary Judgment) throughout this brief use the Court's electronic stamp at the top of each page for numbering.

Plainly, Ms. McGuire departed from Eighth Circuit substantive law at Step Two. While calling this a "sexual misconduct case" opens the door for Ms. McGuire to raise instances of significantly dissimilar misconduct (in the Constitutional sense) that DCSO investigated before February 10, 2013, her semantic recasting cannot change the legal standard.

Ms. McGuire cannot generate a factual dispute warranting denial of the County Defendants' motions summary judgment because her entire argument requires this Court to ignore substantive law when it is well settled that only substantive law identifies facts that are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Only disputes over facts that might affect the outcome under governing law can properly preclude the entry of summary judgment. *Id.* Ms. McGuire's failure to frame her claims in relation to substantive, governing law yields a series of conclusions having no bearing upon the legal framework in which this Court must reach its decision. When the correct legal standard is applied to any iteration of a claim stemming from Cooper's rape of Ms. McGuire, every one of her theories against the County Defendants collapses because there is no evidence of their notice of (or even the occurrence of) a widespread pattern or similarly egregious constitutional violations.

## I. ARGUING THAT COOPER UNLAWFULLY SEIZED HER FROM THE START OF THEIR ENCOUNTER CANNOT CREATE A TRIABLE ISSUE ON MS. MCGUIRE'S FOURTH AMENDMENT CLAIM AGAINST THE COUNTY DEFENDANTS IN COUNT I.

Ms. McGuire's Fourth Amendment argument focuses exclusively on Cooper's actions the evening of February 10, 2013. She offered no evidence or argument that Dunning (1) had notice of a pattern of unlawful seizures in violation of the Fourth Amendment amongst his subordinates; (2) was deliberately indifferent to or tacitly authorized those unconstitutional seizures; and (3) failed to take sufficient remedial action; (4) proximately causing her unlawful

3

seizure. These are the elements she must prove in order to hold Dunning individually liable. *Livers v. Schenck*, 700 F.3d 340, 355-56 (8th Cir. 2012) (listing elements of failure to train and failure to supervise claim against a supervisor) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).  Pursuant to NECivR 39.2 ("Abandonment of Issues"), her failure to respond to Dunning's arguments and evidence (namely, the lack of any widespread pattern of Fourth Amendment violations (Dunning Decl. ¶54)) warrants treating the claim as abandoned.[2]  In the alternative, her failure to address Dunning's individual liability for Cooper's alleged Fourth Amendment violation may be deemed as conceding there is no evidence supporting the claim and that summary judgment should be granted to Dunning on Count I.

To support her Fourth Amendment claim against Douglas County, Ms. McGuire must show that (1) Douglas County's training and supervision were inadequate; (2) Douglas County was deliberately indifferent to the rights of others in adopting them, such that the failure to train or supervise reflects a deliberate or conscious choice by it; and (3) the alleged

---

[2] *See, e.g., Glasgow v. Nebraska*, No. 8:14CV244, 2015 WL 691404, \*9 (D.Neb. Feb. 18, 2015) (plaintiff failed to address numerous arguments raised by the defendants and, therefore, the Court deemed that she abandoned those arguments pursuant to NECivR 39.2); *Union Pacific R. Co. v. Beemac Trucking, LLC*, 929 F.Supp.2d 904 (D.Neb. 2013) (citing NECivR 39.2 to find that to the extent that plaintiff sought recovery for the damages caused to its locomotive when goods which were to be delivered to its rail yard were involved in collision with plaintiff's locomotive, such argument was abandoned based on plaintiff's failure to address it at summary judgment); *Ballard v. Heineman*, No. 4:07CV3122, 2007 WL 2461931, \*2 (D.Neb. Aug. 27, 2007) (plaintiff offered no response to defendants' assertion that Nebraska statutes do not create any private civil cause of action for alleged damages related to racial profiling, and plaintiff's failure to discuss this issue was considered abandonment of the cause of action pursuant to NECivR 39.2); *Ziola v. Central Neb. Rehabilitation Services*, No. 4:06CV3207, 2007 WL 3046350, \*3 (D.Neb. Oct. 17, 2007) (plaintiff asserted both disability and age discrimination claims in her complaint; defendant's brief asserted that there was no fact from which an inference of age discrimination could be drawn and plaintiff's brief did not address the claim so the court found plaintiff abandoned her age discrimination claim by failing to brief it pursuant to NECivR 39.2); *Riddle v. Wachovia Securities, LLC*, No. 8:05CV87, 2005 WL 3409581, fn 4 (D.Neb. Dec. 12, 2005) (although plaintiff's amended motion alleged several additional grounds for setting aside the arbitration award, those additional grounds were not discussed in the opposition brief and thus deemed abandoned under NECiv R 39.2).

deficiency in training and supervision actually caused her plaintiff's injury. *Parrish v. Ball,* 594 F.3d 993, 997 (8th Cir.2010) (internal quotations omitted).    To show Douglas County's deliberate indifference, a prior pattern of very similar constitutional violations is ordinarily a necessity. *Connick v. Thompson*, 563 U.S. 51, 63, 131 S.Ct. 1350 (2011). *See also Atkinson v. City of Mountain View, Mo*., 709 F.3d 1201, 1216-17 (neither failure to train nor failure to supervise claim may succeed against municipality  without evidence the municipality received notice of a pattern of unconstitutional acts committed by its employees) (internal quotation marks omitted).   Dunning denied knowledge of any pattern of unlawful searches or seizures. Dunning Decl. ¶54.  Ms. McGuire offered no evidence or even argument refuting his testimony or even suggesting one existed.  In fact, Section III of Ms. McGuire's brief – containing her argument about Douglas County – focuses entirely upon sexual misconduct, not unlawful seizures. Document 131, pp. 130 – 151.  As a result, even the conclusion that Cooper violated the Fourth Amendment does not give rise to a claim against Douglas County because there is no evidence of an element essential to her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548 (1986)(a complete failure of proof concerning an essential element of the nonmovant's case necessarily renders all other facts immaterial and the moving party is entitled to a judgment as a matter of law).   Summary judgment should be granted Douglas County on Count I.

### A. COOPER DID NOT SEIZE MS. MCGUIRE WITHOUT REASONABLE ARTICULABLE SUSPICION OF CRIMINAL ACTIVITY.

Argument that Cooper unlawfully seized Ms. McGuire from the moment he asked her to step out of Mr. Worland's truck (Document 131, pp. 80-81) cannot create any genuine dispute of fact because resolution of the questions Ms. McGuire raises does not change the fact that Cooper had developed a reasonable articulable suspicion of criminal activity before asking Ms. McGuire

to get out of the truck.  First, Ms. McGuire disputes that Cooper could have smelled the odor of marijuana when he approached Mr. Worland's truck (Cooper Deposition at 247:2 – 12) because the windows were closed.  Significantly, this argument accepts that an open window would release the odor of marijuana from Mr. Worland's truck.  Next, Ms. McGuire disputes Cooper's testimony that he recognized by sight the marijuana sitting in Mr. Worland's vehicle upon shining his flashlight into the truck. *Id*. at 249:20 – 251:1 and 451:17.

There are two reasons these alleged factual disputes are not material to the determination that Cooper had developed a reasonable articulable suspicion of criminal activity before asking Ms. McGuire to get out of the truck.  First, summary judgment must be determined on the basis of admissible evidence. Fed. R. Civ. P. 56(c)(2) (party may object that material cited cannot be presented in a form that would be admissible into evidence, but a separate motion to strike is not needed (Comment to 2010 Amendment, Subdivision (c)).   Mr. Worland's testimony from Cooper's criminal prosecution is hearsay and cannot be admitted absent some foundation under Fed. R. Evid. 804.  No such foundation has been established.  Under Fed. R. Evid. 103(a)(1) admission of Mr. Worland's deposition testimony is prejudicial and the County Defendants hereby object to it.

Hearsay problem notwithstanding, there is no genuine dispute over Ms. McGuire's sworn testimony (from this lawsuit) that Mr. Worland rolled down the Ms. McGuire's window to talk with Cooper well <u>before</u> Cooper asked Ms. McGuire to step out of the truck. Ms. McGuire Deposition at 74:21-24.  Since Ms. McGuire's argument accepts the proposition that an open window would release the odor of marijuana, her own totally undisputed testimony that the window was opened <u>before</u> Cooper ever asked Ms. McGuire to exit the truck reasonably infers that Cooper was able to smell the odor of marijuana before any claimed seizure. The odor of

marijuana is highly probative in establishing probable cause for a search.  *See Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948) (presence of odor, testified to by witness who is qualified to know that odor is distinctive to forbidden substance, might be persuasive evidence of probable cause for search); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000) ("[T]he smell of marijuana gave the deputy probable cause to search Peltier's truck for drugs."); *United States v. Mayfield*, 678 Fed. Appx. 437, 439-40 (8th Cir. 2017) (even though the officer's testimony had some discrepancies, that did not affect whether he credibly testified that he smelled marijuana emanating from the car, which gave him probable cause to search; the officer's testimony was supported by an admission from the car's passenger that he had smoked marijuana that morning and the fact that marijuana was found in the hotel room where the occupant said it would be).

Finally, argument that Ms. McGuire committing no crime at Lake Zorinsky because she and Mr. Worland had smoked the marijuana somewhere else (Document 131, p. 81) cannot generate a dispute of fact over the existence of a reasonable articulable suspicion justifying Ms. McGuire's removal from the truck.  In 2013, Nebraska criminalized possession of marijuana, not simply its use. *See* Neb. Rev. Stat. § 28-416.  Ms. McGuire's sworn deposition testimony stated she understood possessing marijuana was illegal on February 10, 2013. Ms. McGuire Deposition at 66:19 - 67:5.

### B. COOPER'S PROLONGED DETENTION OF MS. MCGUIRE MUST BE SCRUTINIZED UNDER THE FOURTEENTH AMENDMENT AND NOT THE FOURTH AMENDMENT.

Ms. McGuire cannot create a dispute over applicable law by asking this Court assume Cooper did not rape her. Document 131, p. 82.  In their Answer to Ms. McGuire's Complaint, the County Defendants judicially admitted that Cooper raped her.  This does away with the need

7

for any further evidence on this point as to the County Defendants so argument speculating that a jury may find otherwise in relation to Cooper is immaterial to the facts presently before this Court.

In addition, her effort to distinguish the facts of this case from the rule in *Rogers, supra* (sexual assault by an on-duty officer triggers Fourteenth – not Fourth Amendment scrutiny) (Document 131, p. 82) fails because the claimed "break" in law enforcement action she claims to have occurred in the *Rogers* case simply never happened.  In *Rogers*, the officer pulled the woman over for a traffic violation and later followed her home under the guise of obtaining her missing proof of insurance.  Once there, he ordered her to take off her clothes, forced her onto a bed, and had sex with her. The Eighth Circuit concluded that the officer exercised the coercive power he had as a law enforcement officer in order to accomplish the rape. 152 F.3d at 796-97. Fourteenth Amendment analysis was proper because his misconduct fell at the extreme end of the "'arbitrary exercise of the powers of government'" that substantive due process protections were intended to guard against. *Id.* at 797 (quoting *County of Sacramento v. Lewis,* 523 U.S. 833, 845, 118 S.Ct. 1708 (1998)).  Ms. McGuire's prolonged detention was part and parcel of Cooper's sexual assault upon her.  It must be analyzed under the Fourteenth Amendment.

## II. DISREGARDING THE APPLICABLE LEGAL STANDARD AND SUBSTITUTING A MUCH LOWER, MORE ENCOMPASSING ONE NEVER BEFORE RECOGNIZED OR APPLIED IN THE EIGHTH CIRCUIT DOES NOT CREATE A TRIABLE ISSUE ON MS. MCGUIRE'S EQUAL PROTECTION CLAIM IN COUNT II.

Ms. McGuire's Equal Protection Clause claims[3] against the County Defendants fail because she offered no evidence showing that Dunning, individually and as policymaker,

_____

[3] The County Defendants do not abandon their position that summary judgment is proper as to Ms. McGuire's Count II because sexual assault on the basis of a person's gender constitutes a violation of Substantive Due Process, not the Equal Protection Clause.  Where a particular amendment provides a textual source of constitutional protection against a particular sort of

purposefully discriminated against women or undertook any action because of its adverse effects upon women that resulted in a widespread pattern or practice of unlawful gender discrimination. *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Her reliance on the broad definition of sexual misconduct (as opposed to very similar constitutional violations) does not allow her to create a genuine dispute of material as to gender discrimination for purposes of Count II.

Ms. McGuire does not direct the Court's attention to evidence with respect to any other women who were sexually assaulted by DCSO Deputies prior to February 10, 2013. She offers speculative argument – not actual facts – to undermine Cooper's testimony that he did not commit gender-based discrimination when he initiated contact with Ms. McGuire and Mr. Worland on February 10, 2013. Cooper Deposition at 444:14 – 447:16, 449:1-25, 450:1-20, 451:22 – 452:5, and 473:6-10 (stating the gender of the parties in the truck did not matter when he approached it; that he did not know the gender of the person in the passenger seat until he reached the window and gender did not influence his decision to approach that side; that the gender of the parties in the truck did not influence his decision to shine his flashlight in the truck; that he did not ask Ms. McGuire to get out of the car first because she was a female but because

---

government behavior, that amendment must be the guide for analyzing a plaintiff's claim. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The Eighth Circuit has stated that Substantive Due Process is the source of constitutional protection against sexual assault by a law enforcement officer (*Haberthur v. City of Raymore, Missouri,* 119 F.3d 720, 723 (8th Cir. 1997); *Johnson v. Phillips*, 664 F.3d 232, 239 (8th Cir. 2011); *Rogers v. City of Little Rock, Ark*., 152 F.3d 790, 795-96 (8th Cir. 1998)), and courts have declined to hold that a sexual assault, in itself, rises to the level of an Equal Protection violation. *Williams v. Prudden*, 67 Fed. Appx. 976, 977 (8th Cir. 2003); *Barney v. Pulsipher*, 143 F.3d 1299, 1308 (10th Cir. 1998). Cooper violated Ms. McGuire's Substantive Due Process when he sexually assaulted her, and she has not established through actual record evidence that there are more extensive damages for her equal protection claim (Count II) than her Substantive Due Process claim (Count III). The isolated incident of Cooper's gender-motivated sexual assault on February 10, 2013, cannot alone form the basis for or establish a violation of the Equal Protection Clause by the County Defendants.

she was closest to him; that had Mr. Worland been in the passenger seat, he would have asked him to get out first). She cannot get around this evidence by asking the Court to make a credibility determination as to Cooper's testimony on this subject at this time. *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004) (at summary judgment, a court does "not weigh the evidence or attempt to determine the credibility of witnesses"); *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996) (at summary judgment, the court should not weigh the evidence, make credibility determinations or attempt to determine the truth of the matter, but rather determine whether a dispute about a material fact is genuine).[4]

Ms. McGuire has not compiled either numerical data showing a disparity in DCSO's treatment of citizens based on gender prior to February 10, 2013, or evidence of specific instances other than the one involving her in which DCSO Deputies treated similarly situated citizens differently (particularly by sexually assaulting female citizens) prior to February 10, 2013. *See Gilani v. Matthews*, 843 F.3d 342, 348–49 (8th Cir. 2016). During Cooper's deposition, Ms. McGuire's counsel did not ask Cooper about which side of the car he approached in other instances in which he caught couples in compromising situations. There were no questions about who Cooper asked to step out of the cars first in those situations. Her failure to establish this record evidence does not allow her to escape summary judgment by arguing that there is a dispute of fact. The only evidence Ms. McGuire has to support her claim

---

[4] This Court should not allow Ms. McGuire to argue that select portions of Cooper's testimony are not credible, as she does here, and then allow her to rely on his testimony as fact elsewhere in attempt to dispute evidence (which she does many times in her opposition to the County Defendants' undisputed facts in Document 128 as well as in her own 57-page statement of facts in her opposition brief). Ms. McGuire does not explain how she discerns which part of Cooper's testimony is credible and which parts are not, leaving one to assume that she simply discounts what is not favorable to her and puts full faith and credit in what she considers as favorable to her claims. This cannot be allowed, particularly where she has no facts (only speculative argument) to directly show Cooper's testimony is not credible. Credibility determinations are not to be made at summary judgment.

10

is Cooper's actions toward her on February 10, 2013. Considerably more proof than a single incident of gender-motivated sexual assault by Cooper is necessary in order to establish constitutional fault for gender discrimination on the part of the County Defendants. *See McGautha v. Jackson County, Mo. Collections Dept.*, 36 F.3d 53, 56-57 (8th Cir. 1994). "One officer with a grudge against women does not constitute a 'widespread practice' of harassment or discrimination, particularly where there is no evidence that any policymaking authorities were aware of his tendencies." *Durkin v. City of Chicago*, 199 F.Supp.2d 836, 844 (N.D. Ill 2002) (evidence that an officer generally "had it in for women" and "would pick on women simply because his wife let him," was not enough to constitute a widespread practice of equal protection violations, especially where no policymaker was aware of his tendencies).

Ms. McGuire cannot just rely on Cooper's alleged discriminatory intentions to impose liability on Dunning and Douglas County. She must show evidence of intent by Dunning, individually and as policymaker, to engage in unconstitutional gender discrimination. *See Ellis v. Houston*, 742 F.3d 307, 320 (8th Cir. 2014) ("In order to be found liable a supervisor must have the 'purpose' of engaging in unconstitutional discrimination.") (citing *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937); *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) ("For discrimination claims…where the state of mind of purposeful discrimination is an element of the violation, a supervisor is liable only if she [or he] had the specific intent to discriminate."); *Sandra T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010) (an equal protection claim against a supervisor requires a showing of intentional discrimination by the supervisor). She cannot do so.

Ms. McGuire's counsel did not ask Cooper if Dunning or DCSO trained Cooper to only approach the side of the car with the female occupant or to always ask the female to step out of the car first. Contrary to Ms. McGuire's speculative argument, there is no evidence that

11

Dunning, individually and as policymaker, tried to hide similar unlawful sexual assault on the basis of a person's gender – or even similar unlawful sexual misconduct (using the broader standard Ms. McGuire relies on that is in direct contravention to controlling precedent as explained above). Evidence from Lt. Martin, the investigator who has been assigned to OPS since September 2008, directly contradicts her factually unsupported assertions. He testified that he has "never thought that DCSO's administrative investigations (whether done by OPS or within the chain of command) were shams or white-washes to hide misconduct." Martin Decl. ¶26. He takes all complaints seriously and investigates them thoroughly and fairly as trained to do by the National Internal Affairs Investigators Association. *Id.* He does not shield himself "from information that may incriminate a deputy(ies) or attempt to hide misconduct discovered during an investigation." This is evidenced by all the steps he took in his administrative investigation of Cooper and assistance to OPD. *Id.* at ¶29.

Ms. McGuire's position that her Equal Protection claim is based on the County Defendants' attempt to hide sexual misconduct is contradicted by record evidence. As explained in more detail in Count III, from 2005 until February 10, 2013, there were only eight (8) complaints of any sort of wide-ranging sexual misconduct toward citizens by DCSO employees (Dunning Decl. ¶86) and, of those, only three (3) were sustained. *Id.* at ¶86(c)(g)&(h). These incidents were isolated, mostly involved inappropriate verbal comments that were not part of any discernible persistent, severe pattern, and none involved sexual assault. *Id.* at ¶¶86(c)(g)&(h) and 87. None of the incidents involved Cooper. *Id.* This is not enough to establish a persistent pattern of severe gender discrimination to put Douglas County on notice of a risk that Deputies were motivated by a discriminatory purpose to commit sexual assault on the basis of a person's gender.

12

The fact that all of the complaints were investigated and discipline imposed when warranted (*id.*) defeats any inference that DCSO Deputies under Dunning's supervisory authority were motivated by a discriminatory purpose. *See Wayte v. United States*, 470 U.S. 598, 610, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (to show discriminatory purpose, a plaintiff must establish that "the decision-maker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) (the mere existence of previous citizens' complaints does not suffice to show a custom of permitting or encouraging excessive force); Ryan Deposition, Exhibit 4 (Report of John Ryan), p. 62 ("I note that in my review I found that all of the internal affairs investigations were thorough and that conclusions were reached based on the evidence available to the agency. Additionally, it is clear that the agency takes corrective action through discipline where such action is appropriate.").   Therefore, her factually unsupported conclusory assertion that Dunning and Douglas County created "the conditions under which Cooper and other Douglas County Sheriff's deputies were allowed to prey on vulnerable women" (Document 24, p. 2) is insufficient to survive a motion for summary judgment.

### III. DISREGARDING THE APPLICABLE LEGAL STANDARD AND SUBSTITUTING A MUCH LOWER, MORE ENCOMPASSING ONE NEVER BEFORE RECOGNIZED OR APPLIED IN THE EIGHTH CIRCUIT DOES NOT CREATE A TRIABLE ISSUE ON MS. MCGUIRE'S SUBSTANTIVE DUE PROCESS CLAIM IN COUNT III.

The County Defendants may not be liable to Ms. McGuire under any theory arising from Cooper's rape of her absent proof of their deliberate indifference to notice of a pattern of egregious violations of substantive due process similar to rape.  Without evidence that a series of similarly egregious incidents brought the risk of rape to Dunning's attention, there is no basis for

13

inferring that his failure to adopt the style of sexual misconduct policy and associated training program Ms. McGuire proposes was the product of his deliberate indifference. *Connick, supra*. The fact that Ms. McGuire believes it would have been better if Dunning adopted a sexual misconduct policy instead of just relying on its code of conduct is no basis for *Monell* liability. *See Frake v. City of Chi.,* 210 F.3d 779, 782 (7th Cir. 2000) (the "existence or possibility of other better policies which might have been used does not necessarily mean that the defendant was being deliberately indifferent."). While arguing that Dunning's implementation of training more specific to sexual misconduct and warning signs to watch for along with heightened supervision of DCSO employees may have prevented an appalling sexual assault upon Ms. McGuire, that suggestion is simply not sufficient to show Dunning's deliberate indifference to a known need for such supervision and training. It is, instead, criticism for his failure to follow her impression of best practices. *Graves v. Mahoning Cnty.*, 821 F.3d 772, 778 (6th Cir. 2016) ("the Constitution does not require police to follow the best recommended practices") (further citation omitted).

### A. TO IMPUTE NOTICE TO DUNNING INDIVIDUALLY AND AS POLICYMAKER OF A CLEARLY ESTABLISHED CONSTITUTIONAL REQUIREMENT FOR MORE OR DIFFERENT TRAINING AND SUPERVISION, PRIOR INCIDENTS HE KNEW OF MUST HAVE INVOLVED SIMILARLY EGREGIOUS SUBSTANTIVE DUE PROCESS VIOLATIONS.

When a law enforcement officer violates substantive due process by raping someone, Eighth Circuit law clearly establishes that the rapist's supervisor has not violated the Constitution unless she or he displayed deliberate indifference to a prior widespread pattern or practice of similarly egregious violations of substantive due process. *Krigbaum, supra*. Early in her argument, Ms. McGuire tellingly admits that "sexual misconduct does not equal sexual assault" (Document 131, p. 73), but then declares "the <u>appropriate</u> way of viewing this case has

14

to be about <u>sexual misconduct, and not limited to acts of sexual assault</u>" (*id*. at p. 74) (emphasis added), and that "notice of the risk of sexual misconduct generally is the relevant inquiry" (*id*. at p. 87).   Her theory of the case is fundamentally at odds with Eighth Circuit law, which unequivocally requires that any prior instances of misconduct Dunning knew of must have been similarly egregious violations of substantive due process and not some lesser form of sexual misconduct.   She emphasizes the fundamental incompatibility between her theory of this lawsuit and actual Eighth Circuit law as she repeats throughout her argument a flawed analogy to a Fourth Amendment excessive force case.   This comparison is inapposite since, unlike the Fourth Amendment, the United States Supreme Court has expressly and repeatedly voiced reluctance to expand the concept of Fourteenth Amendment substantive due process.   *Collins v. City of Harker Heights*, 503 U.S. 115, 126, 112 S.Ct. 1061 (1992); *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258 (1997).   Authority such as *Krigbaum, supra,* gives meaning to this traditional reluctance by setting a high bar before prior acts are deemed capable of imputing notice of a Constitutional mandate for more or different training and supervision.

Ms. McGuire must apply Fourteenth Amendment substantive due process law that was in effect in 2013 because she bears the burden of proving that, in light of Dunning's undisputed knowledge of the indents DCSO investigated before 2013, existing law put him on notice of a constitutional duty to provide more or different training and supervision. *Hess v. Ables*, 714 F.3d 1048, 1051-52 (8th Cir. 2013) ("The plaintiff bears the burden of proving that the law was clearly established.") (citing *Sparr v. Ward*, 306 F.3d 589, 593 (8th Cir. 2002)).   It is axiomatic that he cannot meet her burden by ignoring existing law and substituting her own standard.   The Eighth Circuit's "similarly egregious" standard is clearly more stringent than the far lower "sexual misconduct" standard of her own creation that she applied throughout her argument, so

15

she has in effect analyzed her claims according to a standard that has never been clearly established law.

The more generalized "sexual misconduct" lens enables Ms. McGuire to argue that once Dunning was on notice of any incident involving any sort of sexual component at all, he was constitutionally obligated to implement training and supervision that would have prevented Cooper's rape.  In effect, the "sexual misconduct" standard enables Ms. McGuire to create a constitutional right to different training and supervision where existing Eighth Circuit does not recognize one even today, let alone in 2013.  For all of its obvious advantage for Ms. McGuire, this maneuver cannot overcome Dunning's qualified immunity.  If there exists a constitutional right to more or different training based upon notice of mere "sexual misconduct" – versus notice of similarly egregious constitutional violations – it is obviously not clearly established even today because Ms. McGuire cites no authority for the proposition. *See, e.g., Livers, supra*, 700 F.3d at 360 (pretrial right to disclosure of exculpatory evidence was not clearly established during horribly botched investigation into a double homicide, so the defendants were entitled to qualified immunity from freestanding *Brady* claim).

In addition, the novelty of Ms. McGuire's approach to creating a previously unrecognized constitutional right also prevents *Monell* liability from attaching because Douglas County's policymaker (Dunning) cannot be said to have been deliberately indifferent to a right not clearly established in 2013.  *Szabla, supra*, 486 F.3d at 393 (affirming summary judgment in favor of municipal defendant in §1983 action because duty to warn before commanding a police dog to bite and hold a suspect was not clearly established at the time of incident, and the lack of clarity of the law precludes a finding of deliberate indifference). *See also Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1259 (8th Cir. 2010) (affirming summary judgment dismissing failure to

16

train claim against municipal defendant when underlying right was "far from clearly established"; preventing §1983 plaintiff from showing deliberate indifference).

### B. MS. MCGUIRE CANNOT SUBSTITUTE THE FAR MORE ENCOMPASSING AND LENIENT STANDARD OF "SEXUAL MISCONDUCT" IN THE PLACE OF THE EIGHTH CIRCUIT'S "SIMILARLY EGREGIOUS" STANDARD IN ORDER TO MEET HER BURDEN OF SHOWING A PRIOR WIDESPREAD PATTERN OR PRACTICE OF SUBSTANTIVE DUE PROCESS VIOLATIONS.

Claiming this lawsuit is about broader "sexual misconduct" (Document 131, p. 73) is an admission that no evidence shows a prior widespread pattern or practice of similarly egregious violations of substantive due process.   From the date she filed suit, Ms. McGuire admitted Cooper assaulted her. *See* Doc. 1, ¶ 27 (referring to Cooper's use of the threat of arrest in order to coerce her into partially disrobing and also performing oral sex upon him as "the assault"). The continuous, uninterrupted sequence of Cooper's actions on February 10, 2013 culminated in his sexual assault in violation of substantive due process. *Rogers, supra*, 152 F.3d at 796 (8th Cir. 1998) (rape accomplished through police power violates Substantive Due Process) and *Johnson v. Phillips*, 664 F.3d 232, 239 (8th Cir. 2011) (holding that officer's egregious, nonconsensual sexual assault of motorist violated clearly established substantive due process right to bodily integrity, and conducting separate Fourth Amendment analysis of vehicle search that did not overlap with the sexual assault).   Any purported prior widespread pattern of constitutional violations must be very similar to the conduct giving rise to the instant constitutional claim. *Krigbaum, supra* (citing *Livers, supra.*, 700 F.3d at 356). Thus, while framing this as a "sexual misconduct case" (as if Cooper merely asked Ms. McGuire out on a date) provides Ms. McGuire the chance to point to instances of significantly dissimilar misconduct occurring before February 10, 2013, the semantic recasting cannot change the legal standard that applies to substantive due process claims.   As a matter of controlling law, any

17

previous "sexual misconduct" must have constituted violations of substantive due process similarly egregious to Cooper's rape of Ms. McGuire.

### C. APPLYING THE EIGHTH CIRCUIT'S "SIMILARLY EGREGIOUS" STANDARD TO THE INSTANCES DCSO INVESTIGATED BEFORE COOPER RAPED MS. MCGUIRE SHOWS THERE WAS NO PRIOR WIDESPREAD PATTERN OR PRACTICE OF SUBSTANTIVE DUE PROCESS VIOLATIONS.

It was clearly established in the Eighth Circuit in 2013 that not every type of sexual misconduct rises to the level of violating substantive due process. *Hawkins v. Holloway,* 316 F.3d 777 (8th Cir. 2003). Ms. McGuire's argument that substantive due process is violated by any sexual misconduct at all is contrary to the Eighth Circuit's warning that even behavior deemed "offensive and despicable, and certainly inexcusable" may nevertheless fall shy of the threshold to substantive due process. In *Hawkins, supra*, a group of sheriff's deputies sued the Ray County, Missouri sheriff under § 1983. A female deputy demonstrated that over the course of three years the sheriff had repeatedly grabbed her breasts or placed his hands on them. The male deputies showed the sheriff engaged in horseplay that included grabbing, touching, or brushing sensitive areas of the male deputies' bodies while making sexually suggestive comments. All plaintiffs claimed the sheriff's actions violated substantive due process. On an appeal from the trial court's denial of the sheriff's motion for summary judgment, the Eighth Circuit noted that the male deputies' experiences were "a different breed" from those yielding substantive due process violations in *Rogers, supra*, and *Haberthur v. City of Raymore*, 119 F.3d 720 (8th Cir. 1997) (reversing Fed. R. Civ. P. 12(b)(6) dismissal upon finding a substantive due process claim stated through allegations that officer showed up at § 1983 plaintiff's workplace in uniform and on duty, placed his hand under her sweatshirt to fondle her breast and chest, and

implied they should engage in further sexual contact, all within the larger context of his threatening adverse official on a speeding ticket and following her in his police car).

The Eighth Circuit observed, "[w]hile the sheriff's alleged conduct with respect to the male officers is offensive and despicable, and certainly inexcusable, it pales in comparison to the violation of personal integrity occasioned by the officer's rape in *Haberthur* and the officer's actions in *Rogers*…". 316 F.3d at 784-85.  The Eighth Circuit also found significance in the fact that the sheriff's touchings were not accompanied by threats of official action if the employee rebuffed or complained of his perverted and juvenile behavior. *Id*. (distinguishing *Haberthur* on this basis since, in that case, the threat of criminal citation loomed over the sexual contact). Emphasizing the high bar substantive due process represents, the court observed that "[n]ot every inappropriate or unwanted touching by a public official, even if accompanied by vulgar comments of a sexual nature, can amount to the 'brutal and inhumane abuse of official power' necessary to demonstrate a violation of an individual's bodily integrity sufficient to support a constitutional violation." *Id*. (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002)). Hence, while the Eighth Circuit agreed the female deputy suffered a violation of substantive due process through the sheriff's repeated, intentional touchings of her breasts, the appellate court held that the male deputies described inappropriate sexual contact falling into a category for which there is no constitutional remedy. *Id*. at 785. *See also Reeve v. Oliver*, 41 F.3d 381 (8th Cir. 1994) (finding no substantive due process violation stated when plaintiff alleged that an animal control officer, shortly after arriving at her home, began touching and rubbing her back and staring at her chest and then, after investigating the purpose of the call, returned to her home where he again touched and rubbed her back, stopping when the plaintiff moved away).

Whether any of the matters DCSO investigated before 2013 may appropriately be deemed to have constituted similarly egregious violations of substantive due process is appropriate for decision at summary judgment. The United States Supreme Court has long held that, because the conscience-shocking standard is intended to limit substantive due process liability, it is an issue of law for the judge, and not a question of fact for the jury. *See Collins v. City of Harker Heights,* 503 U.S. 115, 126, 112 S.Ct. 1061 (1992) ("arbitrary government action that must 'shock the conscience' of federal judges"). Ms. McGuire's "sexual misconduct" catch-all is inconsistent with the considerations courts have borne in mind when determining whether an official's acts cross the line from "offensive and despicable, and certainly inexcusable" into being a conscience-shocking violation of substantive due process. These considerations include the duration of event itself, the period of time over which event(s) occurred, whether force or coercions were used, and whether the official's act rose to the level of egregious physical assault. Although Cooper's actions were very similar to the substantive due process considerations in *Rogers* and *Haberthur*, nearly all of the complaints DCSO received in the years before 2013 were more similar to the male sheriff's deputies' experiences in *Hawkins*. Assuming the truth of every one of the underlying complaints, this is all Ms. McGuire has:

- In 1998, a Deputy was forced to resign after trading cigarettes for a detainees' display of her breasts. *See* Dunning Decl. ¶37.

- In 2002, a Deputy was investigated for two separate incidents. *See id.* at ¶89.
    - First, he licked his juvenile step-daughter's nipple while wrestling.
    - Months later, on the way back to from a dental appointment, he took a Juvenile Detainee to his apartment.
    - Neither reported physical contact, although the Juvenile reported he had threatened her not to tell anyone about the stop.

- IA No. 1594 concerned an incident occurring in 2006, when a female motorist stopped on Interstate 80 was asked personal questions. Similarly, IA No. 1771 concerned an incident occurring in 2007, when a female motorist complained that she was stopped on Interstate 80 simply because she was a woman and asked

inappropriate personal questions during the traffic stop by a canine patrol sergeant. There was no physical contact or threats in either case. There was no proposal to let the complainants go in exchange for any personal benefit (sexual or otherwise). Neither stop lasted very long, either. *See id.* at ¶86(a)&(b).

- IA No. 1704 concerned incidents occurring in 2007, at a Deputy's secondary employment position. He was talking about taking a photograph of a young female patient (it was never determined whether he simply pretended to take a picture or actually took one) and then was terminated from his secondary employment position for inappropriate comments made about a female staff member while she was checking a patient into the Emergency Department, use of inappropriate nicknames for some female staff members, and generally used inappropriate and unprofessional language with other hospital staff. There were no allegations of physical contact toward anyone. This was discovered by DCSO after the Deputy had been terminated by his secondary employer. *See id.* at ¶86(c).

- IA No. 1941 occurred in 2008, and involved a building security officer ("BSO") who sexually harassed a female he knew by implying she was "fast" (promiscuous) during a mid-afternoon conversation in the Civic Center. The incident did not last long, was a one-time incident with this woman who the BSO knew, was entirely verbal, and involved no threats or physical contact. *See id.* at ¶86(d).

- IA No. 1965 concerned an incident occurring in 2008, when a BSO (not the same one as IA No. 1941, above) attempted to kiss a woman with whom he was familiar and flirty while the two of them were in an elevator in the Civic Center. This was a one-time incident that did not involve any threatening behavior. The woman filed a complaint with DCSO, which she withdrew. *See id.* at ¶86(e).

- IA No. 1984 concerned an incident occurring in 2008, and involved a Deputy who was transporting three (3) female inmates to a state facility. The Deputy used inappropriate language and brushed his hand against one woman's breast as he loosened her handcuffs. There were no threats, the physical contact was brief (and over the exterior of her clothing), and was the only contact between the two. *See id.* at ¶86(f).

- IA No. 2325 concerned an incident occurring in 2010, when the same BSO from IA No. 1941, above, called a woman (different than the one in IA No. 1941) who worked in a building miles away to ask about a fire alarm that had gone off at her building. He asked to take her out on a date. There were no threats, no physical contact, and the telephone conversation was not prolonged. *See id.* at ¶86(g).

- IA No. 2462 concerned a complaint received in May 2011, when a female called DCSO to submit an anonymous complaint over the phone regarding a DCSO supervisor's actions in his romantic relationships, including having sex at the office and abusing his work hours to conduct personal business. There were no threats of arrest to coerce the complainant into any physical sexual contact. *See id.* at ¶86(h).

- The incident prompting IA No. 2840 occurred sometime around October 2012, but was not reported to DCSO until February 2014 (almost a year after Cooper's sexual assault of Ms. McGuire), at which time it was investigated. A School Resource Officer ("SRO") made inappropriate remarks to a student which held sexual innuendo about that student's mother. It happened once at the school, there were no threats, and no physical contact. *See id.* at ¶86(i).

First, these other incidents simply are not "very similar" (*Livers, supra*) to Cooper extending an investigatory detention of a female (Ms. McGuire) to use of threat of arrest to sexually assault her. Second, even viewed in a light most favorable to Ms. McGuire, only two (2) of the above incidents – the 1998 incident in which cigarettes were traded for flashing[5] and the 2002 incident in which a Deputy doing juvenile transports took a juvenile to his apartment[6] – arguably describe the kind of brutal and inhumane abuses of official power necessary to demonstrate violations of substantive due process. The other incidents do not satisfy the "similarly egregious" standard and cannot be deemed similar enough to impute notice to Douglas County's policymaker. *See Jane Doe A v. Special Sch. Dist. of St. Louis Cnty.*, 901 F.2d 642, 646 fn 4 (8th Cir. 1990) (notice of an employee's sexual misconduct with adults did not provide notice of his sexual misconduct toward children). Two similarly egregious constitutional violations during the fifteen years before Cooper raped Ms. McGuire cannot, as a matter of law, be deemed a widespread pattern of similarly egregious constitutional violations imparting notice to Dunning that his training and supervision of DCSO would cause rape. *Thelma D. By and Through Delores A. v. Board of Educ. Of City of St. Louis*, 934 F.2d 929 (8th Cir. 1991)(five complaints of similar unconstitutional sexual misconduct over sixteen year period cannot be said to comprise a pattern of unconstitutional misconduct). Barring notice of such pattern, Ms.

---

[5] This occurred 10 years before Cooper was hired by DCSO and almost 15 years before Cooper sexually assaulted Ms. McGuire.

[6] This occurred 6 years before Cooper was hired by DCSO and 10 years before Cooper sexually assaulted Ms. McGuire.

McGuire cannot recover from the County Defendants for Cooper's violation of substantive due process.

## IV. SUMMARY JUDGEMENT IS PROPER FOR DOUGLAS COUNTY AS TO COUNT IV.

This Court can neither exercise jurisdiction over the state law issue of indemnification nor can it use Neb. Rev. Stat. § 13-1801 to abrogate the Political Subdivisions Tort Claims Act ("PSTCA"). Because statutory language must be given its plain and ordinary meaning (*Johnson v. City of Fremont*, 287 Neb. 960, 966, 845 N.W.2d 279, 285-86 (2014)), the only interpretation of Neb. Rev. Stat. § 13-1801 is that it restricts political subdivisions' duty of indemnification and denies Douglas County the duty – or even ability – to indemnify a judgment obtained against Cooper for his unconstitutional actions on February 10, 2013.

### A. THIS COURT DOES NOT HAVE JURISDICTION OVER A PREMATURELY FILED STATE LAW CLAIM.

In Count IV of her Complaint, Ms. McGuire asks the Court to direct Douglas County to fully indemnify any judgment obtained against Cooper. In doing so, Ms. McGuire admits that this issue cannot be decided until the issue of liability has been resolved. Document 131, p. 138. Final judgment has not been entered against Cooper so, based on Ms. McGuire's own argument, her claim of indemnification is premature, denying this court of jurisdiction over the issue. *See Jones v. Ziegler*, 894 F.Supp. 880, 896-97 (D.C. Md. 1995) (plaintiff sought to enforce as part of her § 1983 suit a judgment which had not yet been entered; the court found she was prematurely asking for relief under Fed. R. Civ. P. 69(a) and that she had to wait to resort to supplementary proceedings to do so).

Furthermore, Ms. McGuire admits that Count IV is a state law claim. *See* Document 128, p. 1 ("…her Complaint expressly includes a claim under Nebraska law. See Dckt. 1 at County

IV.").  Yet her Complaint only invokes federal question jurisdiction.  Compl. ¶ 2 ("This Court

has jurisdiction of the action pursuant to 28 U.S.C. §1331.").  This does not extend to state law

claims.  *See* 28 U.S.C. § 1331.  Pendent jurisdiction is not a plaintiff's right.  *Cortez v. Nebraska*

*Beef, Inc.*, 266 F.R.D. 275, 285 (D.Neb. 2010) (quoting *Koke v. Stifel, Nicolaus & Co., Inc.*, 620

F.2d 1340, 1346 (8th Cir. 1980)).  If Ms. McGuire intended to plead a state law claim, she

needed to invoke jurisdiction in this Court over the issue.  Because "[f]ederal courts should

exercise judicial restraint and avoid state law issues wherever possible," *Thomas v. Dickel*, 213

F.3d 1023, 1026 (8th Cir. 2000), this Court should decline to independently assume jurisdiction

over the state law question of indemnification in Count IV.

### B.  THE PSTCA'S CONDITION PRECEDENTS TO FILING SUIT (WITH WHICH MS. MCGUIRE DID NOT COMPLY) MUST BE READ IN HARMONY WITH NEB. REV. STAT. § 13-1801.

Plaintiff's Consolidated Response to Defendants Timothy F. Dunning's and Douglas

County's Motions for Summary Judgment does not address the arguments set forth by Douglas

County regarding the PSTCA.  Local rules permit this Court to treat her total avoidance of this

issue and her failure to address legal authority cited by Douglas County as abandonment.

NECivR 39.2 (captioned "Briefs"), sub-part (c) ("captioned "Abandonment of Issues") ("…a

judge may treat a party's failure to file a brief or discuss an issue in a brief as an abandonment of

that party's position on any issue not briefed or discussed.").[7]  Ms. McGuire does not contest any

of the arguments explaining why Neb. Rev. Stat. § 13-1801 must be read in harmony with the

PSTCA.

The PSTCA and Neb. Rev. Stat. § 13-1801 must be construed together because they are

both part of Chapter 13 (captioned "Cities, Counties, and Other Political Subdivisions") and

relate to torts committed by political subdivisions' employees.  *See Davis v. Gale*, 299 Neb. 377,

---

[7] See footnote 2, *supra*.

384, 908 N.W.2d 618, 624 (2018) ("A court will construe statutes relating to the same subject matter together so as to maintain a consistent and sensible scheme.").  Statutes pertaining to a certain subject matter which are *in pari materia* may be conjunctively considered and construed to determine the intent of the Legislature so that different provisions are consistent, harmonious, and sensible.  *Id.*  The PSTCA establishes the procedures for bringing tort claims and related lawsuits against Douglas County and defines who can be sued (political subdivisions, their officers, agents, or employees) and for what they may be sued.  Neb. Rev. Stat. § 13-1801 is more narrow, describing when political subdivisions must indemnify their employees for a judgment obtained against them.  Neb. Rev. Stat. § 13-1801 does not abrogate the PSTCA.  *Bergan Mercy Health Sys. v. Haven*, 260 Neb. 846, 860, 620 N.W.2d 339, 350 (2000) (when statutes concern the same subject, courts attempt to harmonize both so that effect can be given to both without conflict); *Davis, supra*, 299 Neb. at 384, 908 N.W.2d at 624.

The PSTCA and Neb. Rev. Stat. § 13-1801 must be construed together so the public policy behind both remains consistent and harmonious.  *Davis, supra*, 299 Neb. at 384, 908 N.W.2d at 624.  The PSTCA and corresponding State Tort Claims Act are modeled after the Federal Tort Claims Act (*Jill B. v. State of Nebraska*, 297 Neb. 57, 67-68, 899 N.W.2d 241, 251 (2017)), which declines to waive immunity for specified intentional torts, thereby promoting high standards of performance by employees and avoiding dangerous exposure of the public treasury.  *Id.* at 73, 899 N.W.2d at 254.  This puts political subdivisions' employees on notice that, while they cannot be sued for certain acts as long as those acts occurred within the scope of employment, they will be individually liable for any wrongs committed outside the scope of employment.  The Legislature's enactment of Neb. Rev. Stat. § 13-1801 in the same statutory chapter as the PSTCA reflects the same thought process.  Therefore, Ms. McGuire's overly

broad interpretation of Neb. Rev. Stat. § 13-1801 would render meaningless the incentive for sound performance from political subdivisions' employees in addition to the preservation of immunity found in Neb. Rev. Stat. § 13-910(7) for intentional torts.

### C. NEB. REV. STAT. § 13-1801 CONTAINS STATUTORY RESTRICTIONS PROHIBITING DOUGLAS COUNTY FROM INDEMNIFYING ANY JUDGMENT OBTAINED AGAINST COOPER.

Neb. Rev. Stat. § 13-1801 does not contain ambiguous or overly broad indemnification language. It does not indemnify all actions of political subdivisions' employees without regard to the nature of the judgment-producing actions and culpability of the employee. The language of Neb. Rev. Stat. § 13-1801 is clear (*Guenzel-Handlos v. County of Lancaster*, 265 Neb. 125, 129, 655 N.W. 384, 387 (2003)), plainly limiting the class of beneficiaries to political subdivisions' officials and employees as defined by state law and restricting indemnification to liability stemming from negligent errors or omissions in the performance of an employee's lawful duties. This statute must be strictly construed. *Id.* at 128, 655 N.W. at 387; *see also Shanahan v. Johnson*, 170 Neb. 399, 411 and 413, 102 N.W.2d 858, 866-67 (1960) (counties and county boards can exercise only such powers as are expressly conferred upon them by statute and enjoyment of a grant of power requires compliance with any condition or restriction placed on it).

Ms. McGuire cannot expand Neb. Rev. Stat. § 13-1801 by relying on her mistaken interpretation of this Court's holding in *Sampson v. Kofoed*, 8:07CV155, 8:08CV107, 2016 WL 7971575 (D.Neb. March 30, 2016), because Neb. Rev. Stat. § 13-1801 is not an insurance contract that can be interpreted broadly. In *Sampson*, the Court was interpreting and applying Douglas County's insurance contract. It collected authority purporting to show a trend in modern cases toward expanding insurance agreements in order to ensure victims recover for their

injuries.  *Id.* at *12.  The highest court in the State of Nebraska has noted this reasoning cannot be applied to indemnification statutes because it is against public policy.  *Jill B.*, *supra*, 297 Neb. at 73, 899 N.W.2d at 254 (analogizing the intentional torts exception in the federal and corresponding state level tort claims acts to an insurance contract and finding that "it is against public policy to insure against liability for intentional actions").  A political subdivision is not an insurance agency.  It is limited to those powers granted to it by the Legislature and, when the Legislature enacted Neb. Rev. Stat. § 13-1801, it prohibited indemnification of Cooper's intentional actions.

   1.  **Neb. Rev. Stat. § 13-1801 does not apply because Ms. McGuire does not have standing under this law.**

There is no authority recognizing a third-party plaintiff's right to direct action under Neb. Rev. Stat. § 13-1801 and the record does not support a finding that the statute contemplated benefitting Ms. McGuire.  Ms. McGuire misinterprets *Sampson, supra,* to claim that this case grants her standing because the plaintiffs sought payment in that case.  However, that was a garnishment proceeding in which the plaintiffs sought to "enforce the judgments through execution on the proceeds of an insurance policy" (2016 WL 7971575, at *1), they were not seeking indemnification from Douglas County pursuant to Neb. Rev. Stat. § 13-1801.  Neb. Rev. Stat. § 13-1801 does not expressly mention plaintiffs injured by political subdivisions' employees' negligent torts as someone who can utilize the law.  The purpose of this statute is to create the duty to defend and indemnify political subdivisions' employees (as defined in Neb. Rev. Stat. § 48-115) and outline when those duties are applicable.  The language of Neb. Rev. Stat. § 13-1801 is clear (*Guenzel-Handlos*, *supra*, 265 Neb. at 129, 655 N.W. at 387) so this Court must find that the statute does not support a third-party beneficiary claim.  Furthermore,

27

even assuming her standing under Neb. Rev. Stat. § 13-1801, Ms. McGuire still would be required to comply with the PSTCA, which she did not do.  Esch Decl. at ¶4.

### 2.  Neb. Rev. Stat. § 13-1801 does not apply because Cooper's actions on February 10, 2013, were not negligent.

Cooper's intentional decision to prolong his investigatory detention of Ms. McGuire and threaten to arrest her boyfriend to coerce her into performing oral sex on him is greater than negligence or even gross negligence.  She filed the instant lawsuit "pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution" (Compl. ¶1), alleging violations of the Fourth and Fourteenth Amendments. Compl. ¶¶35-41 (captioned "Count I – 42 U.S.C. § 1983, Fourth Amendment"), ¶¶42-48 (captioned "Count II – 42 U.S.C. § 1983, Equal Protection"), and ¶¶49-54 (captioned "Count III – 42 U.S.C. § 1983, Due Process").  Every one of these constitutional claims accuses Cooper of acting "intentionally," with "willful indifference," "malice," "willfulness," and "reckless indifference."  Compl. ¶¶37, 38, 42, 45, 49 and 51.  Neb. Rev. Stat. § 13-1801 does not allow for indemnification of such intentional actions – only political subdivisions' employees negligent errors or omissions.  Injuries inflicted by negligence are not addressed by the U.S. Constitution. *Daniels v. Williams*, 474 U.S. 327, 333, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *see also Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); *Johnson v. Scotts Bluff County Sheriff's Dept.*, 245 F.Supp.2d 1056, 1060 (D.Neb. 2003) ("negligent conduct simply does not give rise to a constitutional claim pursuant to section 1983").

Cooper alone must bear the consequences of his unconstitutional and illegal actions toward Ms. McGuire.  In April of 2015, Cooper pled no contest to and was found guilty of two

Class I misdemeanors for his actions on February 10, 2013, and was sentenced to be imprisoned for a total of one year.  Kleine Decl. at ¶8; Keane Deposition at 61:12-20; Keane Deposition at Exhibits 75 and 77.  His conviction[8] reveals Cooper's actions directed at Ms. McGuire could not have been negligent – they were intentional[9] and illegal.  Ms. McGuire's speculative argument that a jury could find Cooper's actions for which he was convicted to somehow be negligent is directly contradicted by record evidence.[10]  *See* Keane Deposition at 63:13 – 64:18 (describing the state of mind required for each misdemeanor and how each one applied to Cooper's actions). Her claim that assault could be negligent misrepresents record testimony by ignoring significant Ms. Keane's express testimony that assault is not a negligent crime.  *Id.* at 118:12-24 (stating

---

[8] Ms. McGuire's assertion that "there is no pending motion that the conviction be admitted into evidence" (Document 128, p. 142) is incredible and incurably inconsistent with her own pleadings, which alerted the Court from the first day of this lawsuit that Cooper had been charged with first degree sexual assault and ultimately took a plea deal. Compl. ¶¶32-34.  Ms. McGuire's Complaint is a judicial admission that Cooper was convicted.  *See Missouri Housing Development Com'n v. Brice*, 919 F.2d 1306, 1314 (8th Cir. 1990) (admissions in pleadings are in the nature of judicial admissions and are binding unless withdrawn or amended); *see also Robison v. Madsen*, 246 Neb. 22, 28, 516 N.W.2d 594, 598 (1994) (defining judicial admission and including allegations in a pleading as examples of the same); *Cook v. Beermann*, 202 Neb. 447, 448, 276 N.W.2d 84, 85 (1979) ("The rule of evidence is that matters contained in pleadings are judicial admissions insofar as the adversary is concerned.").  This Court may take notice of and consider information necessarily embraced by the complaint (*Gorog v. Best Buy Co., Inc.*, 760 F.3d 787, 791 (8th Cir. 2014)), as well as items in the public record, including state court records from *State of Nebraska v. Cory A. Cooper*.  *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).  Furthermore, there is factual record evidence from Douglas County Attorney Don Kleine and Deputy County Attorney Molly Keane regarding Cooper's criminal prosecution and conviction.

[9] Cooper pled guilty to Assault in the Third Degree and Attempted Tampering with Physical Evidence.  Kleine Declaration ¶8.  Assault in the Third Degree requires intentional or reckless conduct.  *See* Neb. Rev. Stat. § 28-310 (captioned "Assault in the third degree; penalty"). Attempted Tampering with Physical Evidence requires intentional conduct.  *See* Neb. Rev. Stat. § 28-201 (captioned "Criminal attempt; conduct; penalties") and § 28-922 (captioned "Tampering with physical evidence; penalty; physical evidence, defined").

[10] This line of argument seemingly attacks the sufficiency of Cooper's plea deal and conviction, which Ms. McGuire approved of.  Keane Deposition at 68:22 – 69:8 (stating Ms. McGuire agreed that it was more important to secure a conviction ensuring that Cooper will never be a law enforcement officer again) and 83:1-15 (stating that Ms. McGuire indicated she was satisfied with the plea deal and was glad she did not have to testify at trial).

that regardless of whether assault is intentionally knowingly or recklessly causing bodily injury or is threating another in a menacing manner, it requires intent). This makes clear that Cooper's intentional and illegal actions prohibit indemnification. Ms. McGuire simply cannot re-characterize his deliberate criminal acts as negligence for purposes of trying to avail herself to indemnification of any judgment she obtains against Cooper under Neb. Rev. Stat. § 13-1801.

### a. Count III is predicated on intentional conduct, defeating any attempt to recast Cooper's actions under it as negligent.

There is no such thing as negligent sexual assault. Worley Deposition at 99:5-7; *see also Hart v. Miller*, 609 N.W.2d 138, 148 (S.D. 2000) ("One does not negligently solicit sexual favors."). Ms. McGuire alleged that "Cooper forced [her] to perform oral sex on him" and that she did not consent to this unwanted sexual contact. Compl. ¶26. The plain meaning of the verb "force" as used in Compl. ¶26 is "to compel, constrain, or oblige (oneself or someone) to do something; overcome the resistance of; extort." Dictionary.com (http://www.dictionary.com/browse/force), last visited April 5, 2018; *see also* Black's Law Dictionary (10th ed. 2014) ("to compel by physical means or by legal requirement"). This is not a word describing a negligent action. It cannot be harmonized with her allegation that Cooper's actions for purposes of Count III were "so malfeasant as to shock the conscience." Compl. ¶50. *See Terrell v. Larson*, 396 F.3d 975, 978 and 982 (8th Cir. 2005) (one end of the culpability spectrum is mere negligence and the other is conscience-shocking conduct intended to injure; deliberate indifference falls in the middle of the spectrum, marking the lowest threshold of culpable conscience-shocking conduct, and is greater than negligence) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849-51, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)); *Daniels*, *supra*, 474 U.S. at 332, 106 S.Ct. 662 ("...lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is

a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law.").  There is simply no way Cooper's criminal sexual assault of Ms. McGuire in violation of her Substantive Due Process rights may be categorized as negligent.

### b. Count II is predicated on intentional conduct, defeating any attempt to recast Cooper's actions under it as negligent.

"It is hornbook constitutional law that mere negligence or mistake resulting in uneven application of the law is not an equal protection violation."  *Roe ex rel. Roe v. Keady*, 329 F.3d 1188, 1191-92 (10th Cir. 2003); *see also Rickett v. Jones*, 901 F.2d 1058, 1060 (11th Cir. 1990) ("Merely negligent conduct is insufficient to support a claim for denial of equal protection."). As such, re-casting Count II as negligence would require dismissal of Ms. McGuire's equal protection claim because she would not be able to prove a discriminatory intent or purpose to set forth a prima facie violation of the Equal Protection Clause.  *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (proof of discriminatory intent or purpose is required to show a violation of the Equal Protection Clause); *see also Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944) (discriminatory purpose cannot be presumed).  Actions carried out with discriminatory intent or purpose are not the same as actions that are accidental or negligent.  *See Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 825 (4th Cir. 1995) (if disparate treatment alone were sufficient to warrant a constitutional remedy, then every blunder by a local authority, in which the authority erroneously or mistakenly treats an individual differently than it treats another who is similarly situated, would rise to the level of a federal constitutional claim and such a construction of the Equal Protection Clause is not favored).  Decisional authority is clear that Cooper could not have negligently discriminated against Ms. McGuire in violation of the Equal Protection Clause based

on her gender.   If Cooper's allegedly discriminatory actions are watered down to mere negligence in order to fall within Neb. Rev. Stat. § 13-1801, then Ms. McGuire's Equal Protection claim fails as a matter of law and there can be no judgment to indemnify.

### c. Count I is predicated on intentional conduct, defeating any attempt to recast Cooper's actions under it as negligent.

"[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*."  *Brower v. County of Inyo*, 489 U.S. 593, 596–97, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989) (emphasis in original). This analysis of the nature and purpose of the Fourth Amendment by the Supreme Court concluded that "the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct."  *Id.* at 596, 109 S.Ct. 1378 (internal citation omitted). The finding that Fourth Amendment claims are necessarily predicated on intentional conduct rebuffs any attempt to re-cast Cooper's actions under Count I as negligence.  *See Dodd v. City of Norwich*, 827 F.2d 1, 7–8 (2nd Cir. 1987), *cert. denied*, 484 U.S. 1007, 108 S.Ct. 701, 98 L.Ed.2d 653 (1988) ("The fourth amendment…only protects individuals against 'unreasonable' seizures, not seizures conducted in a 'negligent' manner.").

### 3. Neb. Rev. Stat. § 13-1801 does not apply because Cooper's actions on February 10, 2013, were not within his lawful duties as a DCSO Deputy.

Neb. Rev. Stat. § 13-1801 is limited to "the negligent error or omission of such [employee] while in the performance of his or her *lawful duties*."   (emphasis added). Committing illegal and unconstitutional acts are not lawful duties of a sheriff's deputy because

they are not actions, performances, tasks, or observances permitted or recognized by law that are owed by a person in an official capacity.  State statutes describing the law enforcement and peace-keeping duties of sheriffs, such as Neb. Rev. Stat. §§ 23-1710 and 23-1701.02, eliminate the possibility that sexual assault, soliciting sex from women in exchange for ignoring a criminal offense, and discriminating against citizens are lawful activities within the powers of a DCSO deputy.  In light of his regular law enforcement duties, Cooper knew that, as a sheriff's deputy, he could not sexually harass or sexually assault citizens.  Cooper Deposition at 411:18 – 412:11. *See Hart*, *supra*, 609 N.W.2d at 146, fn 7 (a reasonable officer would have known the powers of his office do not include the right to solicit sex from women in exchange for ignoring a criminal offense because South Dakota law dictates the duties of the Highway Patrol as enforcing the laws, police regulations, and rules governing the operation of motor vehicles and carriers).  Nothing in the record supports the inference that prolonging an investigatory detention of a female citizen in order to use the threat of arrest to sexually assault her is the type of lawful duty DCSO employed Cooper to perform.

The Nebraska Legislature is presumed to know the language used in a statute (*Hall v. City of Omaha*, 266 Neb. 127, 133, 663 N.W.2d 97, 102 (2003)), and it chose to use "lawful duties" in Neb. Rev. Stat. § 13-1801 instead of "scope of employment."  "Lawful" is defined as "not contrary to law; permitted or recognized by law."  Black's Law Dictionary (10th ed. 2014). The clause "lawful duties" should not "be rejected as superfluous or meaningless."  *Id.* at 132, 663 N.W.2d at 102.  "Scope of employment" is considerably broader than explicitly authorized acts of employee, and does not extend to cases where the employee's tort was neither directed in fact nor could be supposed to have been authorized or expected by the employer.  *Carter v. America Online, Inc.*, 208 F.Supp.2d 1271, 1279 (M.D. Fla. 2001) (quoting *City of Green Cove*

*Springs v. Donaldson*, 348 F.2d 197, 202 (5th Cir. 1965). As such, this Court must presume the Legislature knew it was narrowing the duty of indemnification when it used "lawful duties" in Neb. Rev. Stat. § 13-1801 to qualify when political subdivisions' employees may be indemnified – it cannot read a meaning into the statute that is not warranted by the legislative language by imposing the broader "scope of employment" in place of "lawful duties." *Hall*, *supra*, 663 N.W.2d at 132-33, 266 Neb. at 102. "It is not within the province of a court to read anything plain, direct, and unambiguous out of a statute." *Id.* The language of Neb. Rev. Stat. § 13-1801 was expressly found to be clear, not ambiguous, ending any judicial inquiry. *Guenzel-Handlos, supra*, 265 Neb. at 129, 655 N.W. at 388. The principles of statutory interpretation make clear that this Court must uphold the restriction on indemnification for only negligent error or omission of such person while in the performance of *lawful duties*.

Respectfully, this Court's reference in *Sampson* to misstated the statutory standard by addressing "scope of employment" in relation to Neb. Rev. Stat. § 13-1801. 2016 WL 7971575, at *13. That may be the statutory standard in the cases Ms. McGuire relies upon, but it is not the standard under Neb. Rev. Stat. § 13-1801. The phrase "scope of employment" does not appear in the plain language of the statute. With the exception of *Sampson* (which only discusses but does not apply Neb. Rev. Stat. § 13-1801), none of the cases cited by Ms. McGuire apply Nebraska law. For example, her reliance on *Doe v. Clavijo*, 72 F. Supp. 3d 910 (N.D. Ill. 2014), and *Doe v. Roe*, No. 12-C-9213, 2013 WL 2421771 (N.D. Ill. June 3, 2013), is misplaced because both cases apply Illinois state law[11]

---

[11] 745 Ill. Comp. Stat. 10/9-102 states: "A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages (and may pay any associated attorney's fees and costs) for which it or an employee while acting within the scope of his employment is liable in the manner provided in this Article." This is vastly different than Neb. Rev. Stat. § 13-1801 in many ways, but particularly because it only requires an employee to be acting within the scope of his employment rather than while performing his lawful duties.

and were decisions on a judgment on the pleadings and a motion to dismiss, which required the respective courts to assume the plaintiffs' allegations as true. This case is now at the summary judgment stage, with the benefit of the undisputed facts that Cooper's conduct violated his training, Douglas County policy, and Nebraska criminal law. Similarly, citing to cases interpreting law from Oregon, Delaware, and California, are not instructive here because these cases all rely on law from each state using "scope of employment" as the standard. Ms. McGuire does not cite to any case law where the statute is similar to Nebraska in that indemnification is limited to the negligent errors or omissions of political subdivision employees while in the performance of their lawful duties. This Court must not read anything plain, direct, and unambiguous out of Neb. Rev. Stat. § 13-1801 (*Hall*, *supra*, 663 N.W.2d at 132-33, 266 Neb. at 102), which strictly limits indemnification to actions occurring within employees' lawful duties. Extending an investigatory detention of only the female citizen to use the threat of arrest to commit sexual assault in violation of her constitutional rights is not "permitted or recognized by law" (Black's Law Dictionary (10th ed. 2014)) in Nebraska and, thus, could not be a lawful duty of Cooper's as a DCSO Deputy for which he could be indemnified.

### 4. Neb. Rev. Stat. § 13-1801 does not apply because Cooper was not an employee of Douglas County at the time Ms. McGuire filed this lawsuit.

The Legislature has dictated this State's public policy on indemnifying public officials and employees of political subdivisions by enacting Neb. Rev. Stat. § 13-1801. This law does not include Cooper because he was not an employee of Douglas County at the time Ms. McGuire filed suit. "When reading a statute, what it *does not say* is often as important as what it *does say*. Silence can be a meaningful indicator of statutory meaning." *Robinson v. Houston*, 298 Neb. 746, 751, 905 N.W.2d 636, 640 (2018) (emphasis in original). What Neb. Rev. Stat. § 13-1801

*does* say is that political subdivisions cannot indemnify judgments resulting from employees' intentional and illegal actions and that they cannot indemnify non-negligent errors or omissions that occur outside of employees' lawful duties.  What Neb. Rev. Stat. § 13-1801 *does not* say is that political subdivisions shall indemnify past officials and employees.  *See Lozier Corp. v. Douglas County B. of Equalization*, 285 Neb. 705, 714-15, 829 N.W. 652, 660 (2013) (the intent of Legislature may be found through its omission of words from a statute as well as its inclusion of words in a statute).

The differences in scope of people covered by Neb. Rev. Stat. § 81-8,239.05 (which imposes a duty on the State to indemnify officials and employees and its past officials and employees) and Neb. Rev. Stat. § 13-1801 (which imposes a duty on political subdivisions to indemnify only employees as defined in Neb. Rev. Stat. § 48-115) is emphasized by looking at legislative history.  The Nebraska Legislature amended Neb. Rev. Stat. § 81-8,239.05 most recently in 2007 and 2012.  The language providing the State "shall indemnify its officials and employees and its past officials and employees" was already in the statute during those amendments and no changes were made to that phrase.  When those amendments occurred, the Legislature did not amend Neb. Rev. Stat. § 13-1801 to expand the scope of people covered by adding the phrase "past officials and employees."  Recently, the Legislature proposed changes to Neb. Rev. Stat. § 13-1801 in 2017 to strike "out-of-hospital" from the phrase "out-of-hospital emergency care provider" so as not to limit the type of emergency care provider employee covered by the statute.  The amendment did not include further expanding the type of employee covered to include "past officials and employees."  This shows the Legislature's awareness of who is covered by Neb. Rev. Stat. § 13-1801 and who is not.  "[T]hese variations [are]

significant in that they demonstrate the Legislature was capable of using precise language to draft the limitation it wished to impose." *Davis*, *supra*, 299 Neb. at 386, 908 N.W.2d at 626.

The restriction in Neb. Rev. Stat. § 13-1801 prohibiting a political subdivision from paying for a judgment obtained against a person who was not employed by the political subdivision at the time the lawsuit was filed is supported by sound public policy. It should not be the burden of taxpayers to foot the bill for actions deemed to be so terrible that the employee was fired by the political subdivision for those actions before a suit was even brought. *See Besack v. City of Beatrice*, 154 Neb. 142, 145, 47 N.W.2d 356, 358 (1951) (the legislative power and authority delegated to a political subdivision is to be strictly construed and every reasonable doubt as to the extent or limitation of such power and authority is resolved in favor of the taxpayer); *White v. White*, 296 Neb. 772, 777-78, 896 N.W.2d 600, 604-05 (2017) (the Legislature primarily determines the expenditure of public funds).

## CONCLUSION

For the foregoing reasons as explained herein as well as in the County Defendants' briefs in support of summary judgment (Documents 123 and 124), summary judgment is properly granted to the County Defendants on all counts.

DATED this 30th day of April, 2018.

TIMOTHY F. DUNNING, Individually and in his official capacity as Sheriff of Douglas County, Nebraska, and COUNTY OF DOUGLAS, NEBRASKA, Defendants.

DONALD W. KLEINE,
Douglas County Attorney.

BY:   <u>/s/ Timothy K. Dolan</u>
Timothy K. Dolan #20978
Meghan M. Bothe #25208
William E. Rooney III, #24281

Deputy County Attorneys
909 Civic Center
Omaha, NE  68183
T: (402) 444-7622
F: (402) 444-6817
tim.dolan@douglascounty-ne.gov
meghan.bothe@douglascounty-ne.gov
william.rooney@douglascounty-ne.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2018, I electronically filed the foregoing Defendant Timothy F. Dunning's and Douglas County, Nebraska's Joint Reply Brief in Support of Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Arthur Loevy
Cindy Tsai
Jon Loevy
Mark Loevy-Reyes
LOEVY, LOEVY LAW FIRM
312 North May Street, Suite 100
Chicago, IL 60607
arthur@loevy.com
cindy@loevy.com
jon@loevy.com
mark@loevy.com

I hereby further certify that on April 30, 2018, I mailed a copy of the foregoing Defendant Timothy F. Dunning's and Douglas County, Nebraska's Joint Reply Brief in Support of Summary Judgment by First Class United States Mail, postage prepaid, to the following:

Mr. Cory Cooper
10212 V Street
Omaha, NE 68127
c.cooper.417@gmail.com

/s/ Timothy K. Dolan